## COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

Name  Lateef, Khalif  (a.k.a. Haney, Lavon)

    (Last)         (First)        (Initial)

Prisoner Number  C-52678

Institutional Address  Pelican Bay State Prison, P.O. Box 7500

Crescent City, California 95532

================================================================

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

**(PR)**

Khalif Lateef (a.k.a. La Von Haney)  )
(Enter the full name of plaintiff in this action.)  )

**CV 08    00651**

          vs.           )

Case No. _____
(To be provided by the clerk of court)

**JW**

Robert A. Horel, Warden, et al. ____  )
_____ )  )
_____ )  )
_____ )  )
_____ )  )
(Enter the full name of the defendant(s) in this action))  )
_____ )

**COMPLAINT UNDER THE
CIVIL RIGHTS ACT,
42 U.S.C §§ 1983**

*[All questions on this complaint form must be answered in order for your action to proceed..]*

I.    Exhaustion of Administrative Remedies

    [**Note:** You must exhaust your administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.]

    A.    Place of present confinement  Pelican Bay State Prison

    B.    Is there a grievance procedure in this institution?

             YES (X)     NO ( )

    C.    Did you present the facts in your complaint for review through the grievance procedure?

             YES(x)     NO ( )

    D.    If your answer is YES, list the appeal number and the date and result of the

COMPLAINT         - 1 -

1   appeal at each level of review.  If you did not pursue a certain level of appeal,

2   explain why.

3      1. Informal appeal There are multiple appeals & Log Numbers,
the most recent of which is A-07-01190, submitted April 26, 2007, denied

4   on May 21, 2007, at the Informal Level of Review.

5                                                    2. First

6      formal level There are multiple appeals & Log Numbers, the
most recent of which is A-07-01190, submitted May 23, 2007, denied on

7   June 18, 2007, and returned to plaintiff June 26, 2007.

8

9      3. Second formal level There are multiple appeals & Log Numbers,
the most recent of which is A-07-01190, submitted July 4, 2007, denied

10   July 18, 2007, and returned to plaintiff on August 10, 2007.

11                                                 4 Third

12      formal level There are multiple appeals & Log Numbers, the most
recent of which is A-07-01190, originally placed in the cell door for

13   pick up and posting on September 4, 2007, was apparently misplaced in
the institutional mail system, and returned to plaintiff on 9-11-07.

14   Plaintiff re-sent it for Director's Review on 9-12-07, and was denied

15   on 10-23-07. (See Exhibit 1).
   E.    Is the last level to which you appealed the highest level of appeal available to

16      you?

17          YES (X)      NO ( )

18   F.    If you did not present your claim for review through the grievance procedure,

19   explain why. All appeals were exhausted through the grievance procedure

20   except such appeals as were resolved at a lower level of review.

21

22   II.     Parties

23      A.     Write your name and your present address.  Do the same for additional plaintiffs,

24          if any.

25   Khalif Lateef, Pelican Bay State Prison, P.O. Box 7500, Crescent City,

26   California 95532

27

28      B.     Write the full name of each defendant, his or her official position, and his or her

COMPLAINT             - 2 -

1        place of employment.

2        1. Robert A. Horel, Warden, Pelican Bay State Prison

3        2. M.A. Cook, Associate Warden, G.P., Pelican Bay State Prison.

4        3. M.A. Smelosky, Facility-A Captain, Pelican Bay State Prison.

5        4. D. Coleman, Corr. Sergeant, Pelican Bay State Prison.

6        (SEE ATTACHED PAGE ENTITLED "PARTIES").       III.

7 Statement of Claim

8        State here as briefly as possible the facts of your case. Be sure to describe how each

9 defendant is involved and to include dates, when possible. Do not give any legal arguments or

10 cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11 separate numbered paragraph.

12        This is a claim of staff harassment and the violation of multiple

13 rules & regulations of the CDCR by State employees, under color of law,

14 which plaintiff first began to document and formally complain about

15 on February 4, 2004, and has been on going and continuing to plaintiff's

16 latest appeal, submitted April 22, 2007. Plaintiff claims as follows:

17        1. Defendants B. Jackson and W. Patterson have subjected plaintiff

18 to a continuous series of harassment and discrimination, including the

19 wrongful confiscation, desecration, and destruction of his religious

20 items, pictures, artifacts, and other personal property that was properly

21 obtained in accordance with the governing R&R rules at the time, in

22 approved quarterly packages, approved Special Purchase Orders, and items

23 sold in the institutional canteen, and depriving plaintiff of his break-

24 fast meals, and subjecting him to practices of religious bigotry and

       (SEE ATTACHED PAGE ENTITLED "STATEMENT OF CLAIM")

25 IV.     Relief

26        Your complaint cannot go forward unless you request specific relief. State briefly exactly

27 what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28        1. Grant Injunctive relief;

COMPLAINT         - 3 -

1    2.  Grant declaratory relief;

2    3.  Grant compensatory damages;

3    4.  grant punitive damages in the amount of $5,000 from each defendant;

4    5.  Such other and further relief as the court deems just & proper.

5

6

7    I declare under penalty of perjury that the foregoing is true and correct.

8

9    Signed this ___16th___ day of __December_____, 20_07__

10

11   _____

12   (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                              - 4 -

PARTIES:

5.  N. Grannis, Chief, Inmate Appeals Branch, Sacramento, California.

6.  M. Miller, Facility-A Captain (A), Pelican Bay State Prison.

7.  N. Threm, CCII, Pelican Bay State Prison.

8.  D.W. Bradbury, Appeals Coordinator, Pelican Bay State Prison.

9.  M. Lujan, Correctional Sergeant, Pelican Bay State Prison.

10. C.E. Wilber, Appeals Coordinator, Pelican Bay State Prison.

11. J. McMillan, Correctional Sergeant, Pelican Bay State Prison.

12. K.L. McGuyer, Facility-A Captain, Pelican Bay State Prison.

13. B. Jackson, Correctional Officer, Pelican Bay State Prison.

14. W. Patterson, Correctional Officer, Pelican Bay State Prison.

15. Sawaya, Correctional Officer, Pelican Bay State Prison.

16. Campbell, Correctional Officer, Pelican Bay State Prison.

17. Marshall, Correctional Officer, Pelican Bay State Prison.

STATEMENT OF CLAIM:

racial discrimination.

2.  On February 4, 2004, Pelican Bay State Prison was on a general population lock down, and as part of a search team, defendant B. Jackson conducted a search of plaintiff's then assigned cell (A5-108). During the course of said search, defendant Jackson confiscated and destroyed plaintiff's properly purchased and duly authorized Muslim Prayer Oil. Plaintiff appealed via Inmate Appeal Form ("602"), in response to which on the Informal Level, Jackson admitted that he did take and dispose of the property in point. (See Exhibit 2, §§ A, B, & C). He alleged, however, that the prayer oil was in an "altered" container, and that he didn't know what it was. (Refer Exhibit 2, § C and continuation page thereto). Accordingly, defendant Jackson denied the action requested by plaintiff in Section B of the appeal. Per procedure, plaintiff submitted the 602 for Formal Level Review. The reviewing Sergeant granted the request-

5.

ed action and compensated plaintiff for his prayer oil. Therefore, plaintiff agreed that the matter was resolved and needed not be pursued any farther. (Exhibit 2 is merely a copy of only one side of the 602 submitted here. Submission of the 602 to the Formal Level and the subsequent disposition is documented in §§ D & E of the original appeal which is preserved in full in plaintiff's C-file, and will be submitted during Discovery).

3. Plaintiff believes, and the subsequent on-going pattern of harassment supports, that his successful appeal of the wrongfully confiscated prayer oil incurred the ire of defendant Jackson, and he has ever since taken reprisals against plaintiff, and instigated other correctional officers to do the same, all in violation of the rules prohibiting CDCR personnel from doing so.

4. At the time of the above described incidents, plaintiff, as previously stated, was housed in Housing Unit #5 ("HU"). Defendant Jackson was assigned to HU #4, Second Watch Floor Officer. Plaintiff was later moved to HU #3.

5. On June 21, 2005, defendant Jackson left his assigned post in HU 4, and came to HU 3 where plaintiff was then quartered in cell A3-217, and conducted another search of plaintiff's living quarters. (See Exhibits 3 & 4. See also Exhibit 5, § F continuation page, ¶¶ 6-9). Although nothing was discovered during the search to warrant any kind of disciplinary action against plaintiff, defendant Jackson accused him of "altering" state property to an amount totaling $15.45. (See Exhibit 4). However, it was subsequently determined that the accusations were unfounded and plaintiff was not charged for the alleged altering of state property.

6. On April 27, 2006, plaintiff filed a Staff Complaint against defendant Jackson. (See Exhibit 5). Plaintiff has a permanent disability that requires him to be housed in a cell on the lower tier and to sleep in the lower bunk. By then, he had been moved (against his will and over his protests) to HU 4 where defendant Jackson was still one of the Second Watch Housing Unit Floor Officers, along with his friend and

crony, defendant W. Patterson.

7. For several months plaintiff had been struggling with defendants Jackson and Petterson to honor his lower tier/lower bunk medical chrono, which they repeatedly refused to do in a manner that would have been accommodating and compatible. Hence, the problem finally came to a head, and plaintiff filed the Staff Complaint which addressed that issue, as well as the fact that defendant Jackson confiscated plaintiff's personal property and disposed of same without just cause, and instigated defendants W. Patterson, Marshall, Sawaya, and Campbell to conspire with him in wrongfully withholding plaintiff's properly obtained property as explained in detail in Exhibit 5. (See Exhibit 5, § A and attached continuation pages). All of the above was done for the sole purpose of harassing and taking reprisals against plaintiff. (Refer Exhibit 5 in its entirety).

8. The property taken by defendants Jackson and Patterson was permissibly obtained through approved quarterly packages, approved special purchase orders, and from the institutional canteen, according to, and in full compliance with, the approved R&R Property List that was in effect between the time plaintiff first arrived at Pelican Bay State Prison in June 1996, and before any amendments were made to that list.

9. Accordingly, plaintiff was authorized to have the confiscated property in his possession and in the amounts he possessed. On or about May 27, 2004, the approved inmate property list was amended, and it was this amended R&R Property List that defendants Jackson and Patterson used to justify confiscating and destroying plaintiff's property.

10. The actions of defendants Jackson and Patterson, and the other defendants they persuaded to go along with them (See Exhibit 5, § A), was in violation of the rules governing allowable property and how much of said property prisoners at Pelican Bay were authorized to possess, because it is standard operating procedure that, anytime the approved inmate property list is changed, disapproving items and limits that

7.

were previously approved, such items are to be eliminated by attrition, and NOT by confiscation.

11. On May 21, 2006, defendant D. Coleman reviewed plaintiff's Staff Complaint for First Level Response. He was the immediate Line Supervisor of defendants Jackson, Patterson, Sawaya, Marshall, and Campbell. (See Exhibit 5, page entitled "FIRST LEVEL APPEAL RESPONSE").

12. Defendant Coleman knew that plaintiff was authorized to possess said property prior to the amended property list, that plaintiff did, in fact, have his property prior to such time, and that said property was therefore protected under the "Attrition Doctrine."

13. Despite such knowledge, defendant Coleman chose not to give plaintiff's appeal an impartial review and order defendant Jackson to return the property, but decided instead to cover up for his above named subordinates, and to conspire with them to deprive plaintiff of said property.

14. Moreover, defendant Coleman falsified his report in the part entitled "DETERMINATION OF ISSUE," stating that plaintiff had received "prior Rules Violation Reports concerning property issues," and that defendant Jackson afforded plaintiff an opportunity to mail out all excessive and unauthorized confiscated property. (See Exhibit 5, "DETERMINATION OF ISSUE," ¶ 4).

15. Upon Discovery in this case, the evidence will show that plaintiff had no such Rules Violation Reports ("RVR's"), concerning property issues at the time defendant Coleman authored that statement, and that all property confiscated and their amounts, WERE authorized at the time plaintiff obtained them, and that the R&R property list relied on by the defendants was an amended list, fashioned and adopted subsequent to plaintiff's acquisition of his property.

16. Defendants M.A. Smelosky and M. Cook affixed their signatures to defendant Coleman's false report, thereby indicating that they read the document, agreed with it, and approved Coleman's statements and disposition in his response. (See Exhibit 5, "FIRST LEVEL APPEAL RESPONSE," Signatures of Smelosky & Cook).

8.

17.  Defendants Smelosky and Cook knew, or reasonably should have known, that the R&R approved property list had been amended subsequent to plaintiff's obtaining the confiscated property, that he was authorized to have the items and amounts under the property list existant at the time he obtained them, and that it was a blatant false assertion when defendant Coleman alleged plaintiff had been given prior rules violation reports concerning property issues.  Such knowledge should have given more credence to plaintiff's claims of harassment and reprisals, and defendants Smelosky and Cook should have therefore taken appropriate disciplinary actions against their subordinates named above.

18.  Defendants Smelosky and Cook made themselves complicit in the cover up, and parties to the conspiracy to deprive plaintiff of his lawfully obtained and possessed property.  (Refer Exhibit 5, ibid.).  Plaintiff incorporates by reference, the allegations contained in Exhibit 5 and the attachments thereto in their entirety. Both defendant Smelosky and Cook failed to enforce and follow the rules & regulations promulgated by the Director of the CDCR.

19.  On July 24, 2006, defendant N. Threm completed her review of the Staff Complaint at the Second Level and it was returned to plaintiff by defendant M.A. Cook on August 14, 2006.  (See Exhibit 5, § G; see also attachments to Exhibit 5 entitled "PELICAN BAY STATE PRISON, SECOND LEVEL REVIEW").

20.  Defendant Threm did not conduct an independent interview with plaintiff, nor an investigation of her own, but instead relied solely on the information contained in plaintiff's arguments at Section F of Exhibit 5, and the information contained in defendant Coleman's First Level Findings & Determination of Issues, which she simply re-worded, omitting his false allegations regarding previously received rules violation reports concerning property issues, and forwarded to defendant Horel to sign.

21.  Defendants N. Threm and R.A. Horel did, in fact, affix their signatures to a slightly altered version of defendant Coleman's false report, thereby joining

9.

in his denial of the relief sought in the complaint (which included a request for defendant Jackson to cease harassing plaintiff, permit plaintiff to enjoy the property and privileges commensurate with plaintiff's privilege group, and to instruct the defendant to comply with the rules and regulations of the Director of Corrections), and indicating that they read, agreed with, and approved the statements and actions of defendant Coleman.  (Refer Exhibit 5, § G and attached page entitled "PELICAN BAY STATE PRISON, SECOND LEVEL REVIEW", p.2).

22.  Defendants N. Threm, M.A. Cook, and R.A. Horel knew, or reasonably should have known, that plaintiff had lodged multiple complaints concerning defendant Jackson harassing and taking reprisals against him, that plaintiff possessed a valid medical chrono ordering him to be housed on the lower tier in a lower bunk, and that the R&R property list had been amended subsequent to plaintiff's obtaining the confiscated property, that he was authorized to have the items and amounts possessed under the property list existant at the time he obtained them, and that it was a blatant false assertion when defendant Coleman alleged plaintiff had received prior rules violation reports concerning property issues.  Such knowledge should have served to bolster the credibility of plaintiff's claims of harassment and reprisals, and defendants Threm, Cook, and Horel should therefore have taken appropriate actions to fairly remedy the problem.

23.  Instead, the defendants named in paragraph 22 made themselves complicit in the cover up, and parties to the conspiracy to deprive plaintiff of his lawfully obtained and possessed property.  (Refer Exhibit 5, ibid.).  Plaintiff incorporates by reference by reference, the allegations set out at Exhibit 5 and the attachments thereto in their entirety.  The defendants herein named at paragraph 22, failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR.

24.  Plaintiff amends his complaint and moves to join R. Pimentel, Facility Captain, as a defendant in this claim.

25. On November 14, 2006, defendant R. Pimentel, Facility Captain in the role of Appeals Examiner operating out of Sacramento, California, completed review of the aforementioned Staff Complaint. (See attachment page to Exhibit 5, entitled "DIRECTOR'S LEVEL APPEAL DECISION").

26. Defendant Pimentel did not conduct an independent interview with plaintiff, nor an independent investigation, but instead relied solely on the information contained in defendant Coleman's First Level Review, and defendant Threm's Second Level Review, simply re-wording them to eliminate Coleman's false assertions that plaintiff had received previous rules violation reports concerning property issues, and then completing his decision and forwarding it to defendant N. Grannis to sign.

27. Defendant R. Pimentel is identified as the party who reviewed the matter on behalf of the Director of the California Department of Corrections and Rehabilitations, and defendant N. Grannis did, in fact, affix his signature to the slightly altered version of the First and Second Level Reviewers' reports, thereby indicating that they read, agreed with, the statements and actions originally made by defendant Coleman. (Refer Exhibit 5, attachment page entitled "DIRECTOR'S LEVEL APPEAL DECISION").

28. Defendants Pimentel and Grannis knew, or reasonably should have known, that plaintiff had lodged multiple complaints concerning defendant Jackson harassing and taking reprisals against him; that plaintiff possessed a valid medical chrono ordering him to be housed on the lower tier in a lower bunk, which Jackson repeatedly refused to honor, and; that the R&R property list had been amended subsequent to plaintiff's obtaining the confiscated items, that he was authorized to have the property and the amounts possessed under the property list existant at the time he obtained said property, and that upon amending the approved list, all previously approved property and their amounts were to be eliminated by attrition, and not by confiscation. Moveover, defendants Pimentel and Grannis knew, or reasonably should have known, that it was a blatant false assertion when defendant Coleman alleged plaintiff had received

11.

prior rules violation reports concerning property issues.  Such knowledge should have served to bolster the credibility of plaintiff's claims of harassment and reprisals, and the defendants named at paragraph 28 should consequently have taken appropriate action to fairly and impartially remedy the problems complained of.

29.  Instead, the defendants made themselves complicit in the cover up, and parties to the conspiracy to deprive plaintiff of his lawfully obtained and possessed property as part of defendant Jackson's overall acts of harassment and reprisals against him.  (Refer Exhibit 5, ibid.).  Plaintiff incorporates by reference, the allegations set out at Exhibit 5 and the attachments thereto in their entirety.  Defendants Pimentel and Grannis failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR.

30.  On May 1, 2006, plaintiff submitted yet another complaint against defendant Jackson because he continued to use plaintiff's property as a means to harass and take reprisals against him.  (See Exhibit 6, § A).

31.  Specifically, after wrongfully taking plaintiff's property as described in the preceding paragraphs of this claim, Jackson locked the property up in a Housing Unit storage room and refused to give it back when plaintiff returned to he HU after a brief one or two hour detention in a program facility holding cell.  Instead, Jackson went off duty and left instructions with the Third Watch Floor Officers, defendants Campbell and Sawaya, to inventory the property before returning it to him.  (See Exhibit 5, § A, continuation page labeled "APPEAL CONTINUED").

32.  Defendants Sawaya and Campbell did inventory the property that evening per defendant Jackson's request (which was an unnecessary inventory and not within normal operating procedure under the existant circumstances, but was done for the sole purpose of keeping plaintiff's property away from him as long as possible in order to further Jackson's practice of harassing plaintiff.  Defendants Campbell and Sawaya were influenced to assist Jackson in said practice).  However, upon completion of the inventory, they did not return the property to plaintiff.  Instead, they stated that Jackson

12.

would have to issue plaintiff's property to him when Jackson came back on duty. When Jackson finally did return to work he acted to do a second inventory of the property. (See Exhibit 6, § A).  After that second inventory was completed, defendant Jackson, Patterson, Sawaya, Campbell, and Marshall, all of which plaintiff asked to return his property during the course of these events, continued to deprive plaintiff of his property for approximately another week before finally returning only a part of it.

33.  In his Informal Level Response, defendant Jackson  falsified his answer, alleging that plaintiff's was confiscated due to a failure to program.  (See Exhibit 6, § C). Per CDCR rules, an inmate must be taken before a Committee in order to be declared a program failure, and that did not happen.  Plaintiff was not a program failure, he did not receive any disciplinary reports for the incident, nor any other justification for defendant Jackson to confiscate plaintiff's property.  (See Exhibit 5, § A, continuation page labeled "APPEAL CONTINUED").  Farthermore, defendant Jackson admits in his informal reply that the approved property list he relied on was a subsequent list to the one plaintiff's property was purchased under.  (See Exhibit 6, § C; see also Section D).

34.  The pattern of actions and practices support plaintiff's claim that defendant Jackson was carrying out a campaign of harassment and reprisals against plaintiff, and that he instigated other Housing Unit 4 staff to conspire with him in that endeavor. Plaintiff incorporates by reference, the allegations contained in Exhibit 6 and the attachments thereto in their entirety.

35.  On July 28, 2006, defendant Coleman submitted his report for First Level Review.  He was the immediate Line Supervisor of defendants Jackson, Patterson, Sawaya, Campbell, and Marshall.  (See Exhibit 6, attached page entitled "FIRST LEVEL APPEAL RESPONSE").

36.  Defendant Coleman knew, or reasonably should have known based on the numerous

13.

complaints, both verbal and written, that plaintiff had rendered against defendant

Jackson, that he was being subjected to a continuing practice of harassment, reprisals,

and other discriminatory practices, the improper confiscating of plaintiff's property

being only one element of that harassment. Furthermore, defendant Coleman knew, or

reasonably should have known, that plaintiff was authorized to possess said property

prior to the 2005 amended property list referenced by defendant Jackson in his informal

reply, and that said property was therefore protected under the "Attrition Doctrine."

(Refer Exhibit 6, § C)

37. Despite such knowledge, defendant Coleman chose not to give plaintiff's

appeal an impartial review and order defendant Jackson to return plaintiff's property

and stop harassing him, but decided instead to express extreme partiality and favorit-

ism toward the defendants, to cover up for their wrongful acts, and to conspire with

them to deprive plaintiff of his property and the fair treatment he is entitled to

in accordance with the rules of the Director of the CDCR. (Refer Exhibit 6, attached

page entitled "FIRST LEVEL APPEAL RESPONSE," under the heading "DETERMINATION OF ISSUE").

38. Moreover, defendant Coleman falsified his findings in the Determination

of Issue section of his Formal Response, stating unsopported facts such as Jackson

has confiscated contraband from plaintiff, and has repeatedly had to keep plaintiff

in compliance with property policy by conducting cell searches. (Refer Exhibit 6,

"First Level Appeal Response, ¶ 5).

39. Discovery in this matter will support that defendant Jackson has done no

such thing as indicated by defendant Coleman, and that all property ever confiscated

and their limits, WERE authorized by the existant apporved property list at the time

plaintiff purchased them, and that the R&R list used by the defendant was an amended

list, fashioned and adopted subsequently. Hence, plaintiff's property came under

the doctrine of elimination by attrition, and not by confiscation..

40. Defendants M. Miller and M.A. Cook affixed their signatures to defendant

Coleman's totally subjective, misleading response, thereby indicating that they read

14.

the document, agreed with its contents, and approved defendant Coleman's statements
and disposition in the response. (See Exhibit 6, First Level Response attachment).

    41. Defendants Miller and Cook knew, or reasonably should have known, that de-
fendant Coleman was biased against plaintiff based on his prior handling of the First
Level Response attached to Exhibit 5, and based on the tone and statements contained
in his First Level Response attached to Exhibit 6. Moreover, defendants Miller and
Cook knew, or reasonably should have known, based on the numerous complaints, both
verbal and written by plaintiff, that defendant Jackson was subjecting him to an on-
going series of harassment and reprisals. Likewise, defendants Miller and Cook knew,
or reasonably should have known, that the R&R approved property list relied on by
Jackson had been amended subsequent to plaintiff's obtaining his property, that he
was authorized to own the items and amounts in his possession under the property list
existant at the time he purchased said items and/or received them in quarterly packages,
and therefore said property fell under the "Attrition Doctrine."

    42. Such knowledge should have given more credibility to plaintiff's claims
of harassment and reprisals, and defendants Cook and Miller should have therefore
taken appropriate actions to fairly and impartially remedy the problem.

    43. By their actions and failures to act, defendants Miller and Cook made them-
selves complicit in the cover up, and parties to Jackson's conspiracy to deprive plaint-
iff of his lawfully obtained and possessed property as part of Jackson's overall acts
of harassment and reprisals against him. (Refer Exhibit 6, ibid.). Plaintiff incor-
porates by reference, the allegations contained in Exhibit 6 and the attachments there-
to, in their entirety. Defendants Miller and Cook failed to enforce and obey the
rules and regulations promulgated by the Director of the CDCR. (See Exhibit 6, attach-
ment page entitled "FIRST LEVEL APPEAL RESPONSE," signatures of Miller & Cook).

    44. On August 2, 2006, plaintiff's appeal along with the First Level Response
was returned to him. (Refer Exhibit 6, § E). At that time, plaintiff discovered
that the appeal had been stripped of all it's attachments, and the First Level Reviewer's

original reply and attachments had been removed and altered.

45. On August 6, 2006, plaintiff submitted his appeal to the Second Level, requesting that the complete staff complaint and reply be returned to him. (Refer Exhibit 6, § F).

46. Defendant Coleman had written a rules violation report, accusing plaintiff of abusing the appeal process when he lodged his complaints against defendant Jackson. That accusations was determined to be untrue, and defendant Coleman was instructed to rescind the Rules Violation Report. In an effort to cover up his false allegations and subjective findings in reviewing plaintiff's complaints, defendant Coleman removed those documents from the appeal, and returned it to plaintiff in an altered form. Plaintiff pursued this matter in Section F of this appeal. (Refer Exhibit 6, § F, attaced page labeled "SECTION F CONTINUED").

47. Plaintiff amends his complaint and moves to join B. Lanples, CCII, Pelican Bay State Prison, as a defendant in this claim.

48. On September 6, 2006, defendant B. Lanples completed review of the appeal for the Second Level and it was returned to plaintiff on September 9, 2006. (See Exhibit 6, § G).

49. Defendant Lanples did not conduct an independent interview with plaintiff, nor an independent investigation, but instead relied solely on the information provided by defendant Coleman in his First Level of review response in reaching the determination rendered in the second level response. Thereafter, defendant Lanples simply forwarded the paper to defendant Horel to sign.

50. Defendant Lanples is credited with conducting the second level of review, and defendant Horel did, in fact, affix his signature to the response page, thereby indicating that they read the document, agreed with it, and approved Coleman's statements and disposition in the matter. (Refer Exhibit 6, attached page entitled "PELICAN BAY STATE PRISON, SECOND LEVEL REVIEW").

51. Defendants Lanples and Horel knew, or reasonably should have known, that

plaintiff had lodged multiple 602's and staff complaints concerning defendant Jackson harassing and taking reprisals against him; that plaintiff possessed a valid medical chrono ordering him to be housed on the lower tier in a lower bunk, which Jackson repeatedly refused to honor, and; that the R&R property list had been amended subsequent to plaintiff's obtaining the confiscated item, and that he was authorized to have the property and the amounts possessed under the property list existant at the time he obtained said property, and that upon amending the approved list, all previously owned approved property and their amounts were to be eliminated by attrition and not be confiscation.

52. Moverover, defendants lanples and Horel knew, or reasonably should have known, that it was a blatantly false assertion when defendant Coleman alleged plaintiff had received prior rules violation reports concerning property issues.  Such knowledge should have served to bolster the credibility of plaintiff's claims of harassment and reprisals, and the defendants named in this paragraph should consequently have taken appropriate action to fairly and impartially remedy the problems complained of.

53. Instead, the defendants made themselves complicit in the cover up, and party to the conspiracy to deprive plaintiff of his lawfully purchased and possessed property as part of defendant Jackson's overall acts of harassment and reprisals against him. (See Exhibit 6, ibid.).  Plaintiff incorporates by reference, the allegations set out at Exhibit 6 and the attachments thereto in their entirety.  Defendants Lanples and Horel failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR.

54. Plaintiff did not pursue Exhibit 6 to the Third Level of Review, because defendant Coleman stripped the document of its original attachments, rendering it no longer viable as an accurate statement of facts if sent to that final level.

55. On May 4, 2006, plaintiff submitted yet another staff complaint against

17.

defendant Jackson for practicing racial discrimination against plaintiff and his then cellmate, another Black prisoner, for continuing to refuse to honor plaintiff's medical chrono, requiring him to be housed on the lower tier in a lower bunk. Even when no lower tier cell was available, but a lower bunk came open, and plaintiff requested to be moved to that cell in the lower bunk until a cell on the lower tier was also available, Jackson would not honor the move. In the meantime, he repeatedly honored mere convenient cell moves for inmates of other racial backgrounds. (See Exhibit 7, §§ A & B).

56. Defendant Jackson also discriminated against plaintiff and other Black prisoners in the manner he distributed extra food and supplies. (Refer Exhibit 7, § A). These practices were primarily intended as continuing acts of harassment against plaintiff personally, but were also extended to include his then cellmate, and other Black inmates then housed in cells proximate to plaintiff's.

57. Defendant D.W. Bradbury initally rejected plaintiff's complaint with instructions for him to attached the medical chrono. Plaintiff did so, and resubmitted his staff complaint along with a reply to the Screening From on May 18, 2006. (See Exhibit 7, "INMATE/PAROLEE APPEALS SCREENING FORM" dated May 17, 2006, and plaintiff's reply entitled "ANSWER TO APPEAL SCREENING FORM", dated May 18, 2006).

58. On May 25, 2006, defendant Bradbury again rejected plaintiff's complaint, this time alleging that the complaint was submitted beyond the time limits set out in Title 15. (Refer Exhibit 7, "INMATE/PAROLEE APPEALS SCREENING FROM", dated May 25, 2006). Plaintiff contends that defendant Bradbury was trying to prevent plaintiff from having access to the appeal procedure in order to help defendant Jackson get away with his acts of harassment and discriminatory practices against him.

59. On May 29, 2006, plaintiff resubmitted his staff complaint with another reply to defendant Bradbury's rejection notice. (See Exhibit 7, "ANSWER TO APPEAL SCREENING FORM", handwritten response dated May 29, 2006). Thereafter, the appeal

18.

was lodged, and plaintiff began receiving a series of memorandums entitled "EX-CEPTIONAL DELAY IN REVIEW OF APPEAL LOG #: PBSP-A-06-01180" that continued from July 18, 2006 until December 28, 2006. (See Exhibit 7, attached memorandums).

60. Finally, on February 7, 2007, some 9 months after plaintiff first submitted his staff complaint, it was once again assigned to defendant Coleman for Second Level Review. (The Informal and First levels of review were "BY PASSED").

61. Defendant Coleman, already having shown himself to be biased in this matter and blatantly committed to supporting defendant Jackson no matter what, again falsified his report. Defendant Coleman states that "A thorough investigation was conducted at the First Level of Review," but clearly there was no investigation at the First Level of Review, because the complaint was "By Passed" at the level. (Refer Exhibit 7, attachment entitled "PELICAN BAY STATE PRISON, SECOND LEVEL OF REVIEW," subsection entitled "DETERMINATION OF ISSUE," at ¶ 3). That is a blatantly false statement by defendant Coleman. Defendant Horel affixed his signature to the report.

62. Defendants Coleman and Horel knew, or reasonably should have known, that plaintiff had lodged multiple 602's and staff complaints concerning defendant Jackson harassing and taking reprisals against him; that plaintiff possessed a valid medical chrono ordering him to be housed on the lower tier in a lower bunk (Refer Exhibit 7, attachment entitled "PBSP PATIENT INFORMATION SYSTEM, HEALTH CARE SERVICES UNIT CHRONO," and computer generated page documenting plaintiff's MRI results), which de-fendant Jackson repeatedly refused to honor, and; that the R&R property list had been amended subsequent to plaintiff's obtaining the property that Jackson took from him, and that he was authorized to have the property and the amounts possessed under the property list existant at the time he obtained said property, and that upon amending the approved list, all previously owned approved property and their amounts were to be eliminated by attrition and not by confiscation.

63. Moverover, defendant Horel knew, or reasonably should have known, that it was a blatantly false assertion when defendant Coleman alleged plaintiff had received

19.

prior rules violation reports concerning property issues, as well as when he stated in his "DETERMINATION OF ISSUE," in his report dated February 7, 2007, that "A thorough investigation was conducted at the First Level of Review," of the instant staff complaint.

64. Such knowledge should have served to bolster the credibility of plaintiff's claims of harassment and reprisals, and his charge that it was a conflict of interest for defendant Coleman to conduct any parts of the review in these complaints due to the blatant tendency to be bias that his actions had demonstrated, and defendant Horel should consequently have taken appropriate action to fairly and impartially remedy the problems complained of.

65. Instead, defendant Horel knowingly and willing made himself complicit in the cover up, and a party to the conspiracy to wrongfully deprive plaintiff of his lawfully purchased and possessed property as part of defendant Jackson's overall acts of harassment and reprisals, and defendant Coleman's biased, prejudiced adjudications in this matter. (See Exhibit 7, ibid.). Plaintiff incorporates by refernce, the allegations set out in Exhibit 7 and the attachments thereto in their entirety. Defendants Coleman and Horel failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR.

66. On May 21, 2007, defendant Pimentel, Facility Captain in the role of Appeals Examiner operating out of Sacramento, California, completed review of the aforementioned staff complaint on behalf of the Director of the California Department of Correction and Rehabilitation (CDCR), which was then signed by defendant N. Grannis. (Refer Exhibit 7, "DIRECTOR'S LEVEL APPEAL DECISION").

67. Defendant Pimentel did not conduct an independent interview with plaintiff, nor an independent investigation into the complaint, but instead relied solely on the information contained in defendant Coleman's Second Level Review disposition, and then fashioning his decision and forwarding it to defendant Grannis to sign.

20.

68. Like all defendants in this complaint, defendants Pimentel and Grannis are responsible for documents on which they affix their signatures, and therefore they knew, or reasonably should have known, that plaintiff had submitted multiple 602's and staff complaints concerning defendant Jackson's harassing and taking reprisals against him; that plaintiff possessed a valid medical chrono ordering him to be housed on the lower tier in a lower bunk, which Jackson repeatedly refused to honor; that Jackson had practiced racial discriminatory practices against plaintiff, and; that the R&R property list had been amended subsequent to plaintiff's obtaining the property that Jackson took from him, and that he was authorized to have the property and the amounts possessed under the property list existant at the time he had said property, and that upon amending the approved list, all previously owned approved property and their amounts were to be eliminated by attrition and not by confiscation.

69. Moreover, defendants Pimentel and Grannis knew, or reasonably should have known, that it was a blatantly false assertion when defendant Coleman alleged plaintiff had received prior rules violation reports concerning property issues, as well as when he claimed in his report dated February 7, 2007, that "A thorough investigation was conducted at the First Level of Review in his Second Level of Review document.

70. Such knowledge should have served to bolster the credibility of plaintiff's claims of continuing harassment and reprisals by defendant Jackson, and a conflict of interest for defendant Coleman to be involved in the "investigation" of these complaints, and defendants Pimentel and Grannis should consequently have taken appropriate action to fairly and impartially remedy the problems complained of.

71. Instead, defendants Pimentel and Grannis made themselves complicit in the cover up, and party to the conspiracy to deprive plaintiff of his lawfully obtained and possessed property and acts of racial discrimination as part of defendant Jackson's overall acts of harassment and reprisals against him. (Refer Exhibit 7, ibid.). Plaintiff incorporates by reference, the allegations set forth in Exhibit 7 and the

21.

attachments thereto in their entirety. Defendants Pimentel and Grannis failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR.

72. On August 8, 2006, August 27, 2006, September 4, 2006, and November 20, 2006, defendants Jackson, and his Second Watch Floor Officer partner, defendant W. Patterson, continued their practices of harassment against plaintiff by depriving him of his breakfast and noon meals. On each of these occasions, plaintiff submitted 602's, staff complaints, and a group appeal complaining of these violations of the Director's rules.

73. The August 8, 27th, and September 4th complaints were all combined as covering the same problem, and are submitted here collectively as Exhibit 8. (See attached 602's marked Exhibit 8).

74. The November 20th, 2006, complaint was rejected by defendant C.E. Wilber on the grounds that the above mentioned combined appeals were already being completed at the Second Level, and covered the same problem. (See Exhibit 9, "INMATE/PAROLEE APPEALS SCREENING FORM").

75. Per the Director's rules and regulations, inmates' meals, including plaintiff's, are not to be held for any reason.

76. On October 11, 2006, defendants M. Lujan and M. Cook, denied plaintiff's appeal at the First Level of Review, thereby giving defendants Jackson and Patterson permission to withhold prisoners' meals in violation of the rules of the Director. (See Exhibit 8, Appeal bearing Log Number A-06-02266, § E and attached page entitled "FIRST LEVEL APPEAL RESPONSE"). Defendant M. Miller affixed his signature to said First Level Appeal Response, thereby also giving defendants Jackson and Patterson permission to withhold prisoners' meals, including plaintiff's, in violation of the rules & regulations of the Director of the CDCR.

77. On December 5, 2006, defendant N. Threm denied plaintiff's appeals at the Second Level of Review, thereby also giving defendants Jackson and Patterson permission

to withhold prisoners' meals, including plaintiff's, in violation of the rules of the Director. (Refer Exhibit 8, Appeal Log Number A-06-02266, § G and attached letter entitled "PELICAN BAY STATE PRISON, SECOND LEVEL REVIEW").

78. On February 6, 2007, defendant Pimentel completed review of the aforemention- ed staff complaint on behalf of the Director of the California Department of Correction and Rehabilitation (CDCR), which was then signed by defendant N. Grannis. (Refer Exhibit 8, "DIRECTOR'S LEVEL APPEAL DECISION").

79. Neither defendant Pimentel nor defendant Grannis conducted an independent interview with plaintiff, nor an independent investigation into the complaint, but instead relied solely on the information and dispositions contained in the First and Second Level Reviewer's reports, and then fashioned his decision denying the appeal and forwarded it to defendant Grannis who signed it.

80. Like all defendants joined in this complaint, defendants Pimentel and Grannis are responsible for documents on which they affix their signature, and therefore they knew, or reasonably should have known, that plaintiff had submitted multiple appeals and staff complaints concerning defendants Jackson and Patterson harassing and taking reprisals against him; that plaintiff possessed a valid medical chrono requiring him to be housed on a lower tier in a lower bunk, which Jackson repeatedly refused to honor; that Jackson had engaged in racial discriminatory practices against plaintiff; that defendants Jackson and Patterson had withheld plaintiff's meals as a means to harass and take reprisals against him, and; that the R&R property list had been amended subsequent to plaintiff's obtaining the property that Jackson took from him, and that he was authorized to have the property and the amounts possessed under the property list existant at the time he had said property, and that upon amending the approved list, all previously owned approved property and their amounts were to be eliminated by attrition and not by confiscation.

81. Moreover, defendants Pimentel and Grannis knew, or reasonably should have

23.

known, that it was a blatantly false assertion when defendant Coleman alleged that plaintiff had received prior rules violation reports concerning property issues, as well as when Coleman stated in his report dated February 7, 2007, that "A thorough investigation was conducted at the First Level of Review" in his Second Level of Review document. (See Exhibit 7, "SECOND LEVEL REVIEW").

82. Such knowledge should have served to bolster the credibility of plaintiff's repeated claims of continuous harassment, reprisals, and conspiratorial cover ups by defendants Jackson, Patterson, et al, as well as his claims of a conflict of interest for defendant Coleman to be involved in the "investigation" of these complaints, and defendants Pimentel and Grannis should consequently have taken appropriate actions to fairly and impartially remedy the problems herein complained of.

83. Instead, defendants Pimentel and Grannis repeatedly made themselves complicit in the cover up and party to the conspiracy to harass and take reprisals against plaintiff in the manner and ways described above. (Refer Exhibit 8, ibid). Plaintiff incorporates by reference, the allegations set forth in Exhibit 8 and the attachments thereto in their entirety. Defendants Pimentel and Grannis failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR as set forth in  this complaint.

84. On April 26, 2007, plaintiff submitted yet another staff complaint against defendants Patterson and Jackson for their continuing practices of harassing and taking reprisals against him, this time in the form of again wrongfully destroying and confiscating his religious artifacts, pictures, icons and emblems. (See Exhibit 1, § A). Plaintiff sought replacement of the religious items in question or, in the alternative, equitable compensation for the religious property, and instructions for the defendants to comply with the rules and regulations of the Director of Corrections. (Refer Exhibit 1, § B). Plaintiff submitted the appeal directly to the Apeals Coordinator in accord with the provisions set out in Title 15 regarding Staff Complaints, but defendant Wilber rejected the appeal and classified it as a regular 602 instead.

24.

On May 3, 2007, plaintiff sent a response to defendant Wilber, arguing that the appeal was a Staff Complaint, and therefore was exempt from Informal Level reply. Refer Exhibit 1, attached pages entitled "INMATE/PAROLEE APPEALS SCREENING FORM" and "RE: ENCLOSED APPEAL").

85. On May 7, 2007, defendant Wilber again rejected the appeal, instructing plaintiff to pursue an informal response. Plaintiff did so, and on May 21, 2007, defendant Patterson denied the appeal at the Informal Level. (Refer Exhibit 1, § C).

86. Defendant Patterson characterized plaintiff's religious articles as being taken from pages of a magazine or copies of pictures, and therefore considered contraband. (Refer Exhibit 1, § C).

87. Plaintiff's religious property did not consist of pages from magazines, nor were they copies of pictures, but were posters and artwork legally received through the prison mail room, which automatically inspects and pre-approves all in-coming mail prior to forwarding it to the prisoner population, including plaintiff.

88. Plaintiff submitted the appeal to the next level of review, informing that level that defendant Patterson destroyed plaintiff's religious items as part of an on-going pattern of harassment and reprisals that he and his crony, defendant Jackson, has been subjecting plaintiff to for several years. (See Exhibit 1, § D).

89. On June 26, 2007, defendant J. Millan denied plaintiff's appeal at the First Level. Defendant J. Mc Millan response is misleading as it implies that plaintiff had alleged that his religious artifacts were provided by chaplain staff. (See Exhibit 1, attached letter entitled "FIRST LEVEL APPEAL RESPONSE").

90. At no time in his appeal does plaintiff claim his religious artifacts were provided by chaplain staff. Rather, his contentions are he received his religious items through the prison mail room by the approved procedure for receiving inmate mail. (See Exhibit 1, §§ A, D, F & H).

25.

91.  Defendant Mc Millan knew, or reasonably should have known, based on the numerous complaints, both verbally and written, that plaintiff had submitted against defendants Patterson and Jackson, that he was being subjected to repeated acts of harassment and reprisals, and that the improper confiscation of plaintiff's religous property was merely one more incidence of that pattern of harassment.  Furthermore, defendant Mc Millan knew, or reasonably should have known, that plaintiff was author- ized to have the religious items in question because he received them through the approved procedure for in-coming inmate mail.

92.  Despite such knowledge, defendant Mc Millan chose to deny plaintiff's claims and to participate in the cover up, and conspire with defendant Patterson to deprive plaintiff of his religious property in furtherance of the pattern of harassment and reprisals against plaintiff.  (See Exhibit 1, § E and attached page entitled "FIRST LEVEL APPEAL RESPONSE").

93.  Defendants K.L. McGuyer and M.A. Cook affixed their signatures to defendant Mc Millan's response thereby indicating that they read the document, agreed with its contents, and approved defendant Mc Millan's statements and disposition.  (Refer Ex- hibit 1, "FIRST LEVEL APPEAL RESPONSE").

94.  Defendants McGuyer and Cook knew, or reasonably should have known, based on the numerous complaints that had come before them, that plaintiff was being subject- ed to a continuing practice of harassment, reprisals, and other discriminatory pract- ices which were taken in many forms against him by defendants Patterson and Jackson.

95.  Such knowledge should have served to bolster the credibility of plaintiff's claims of harassment and reprisals, and defendants McGuyer and Cook should consequently have taken appropriate actions to fairly and impartially remedy the problems complained of.  Instead, defendants McGuyer and Cook made themselves complicit in the cover up, and party to the conspiracy to deprive plaintiff of his lawfully obtained religous property and right to practice his chosen religion, all part of the acts of harassment and reprisals complained of above.

96.  On August 10, 2007, defendant Threm denied plaintiff's appeal at the Second Level of Review, which action was approved by defendant Horel.  Neither defendant Threm nor Horel conducted an independent interview with plaintiff, nor an independent investigation but, instead, relied solely on the information contained in defendant Mc Millan's First Level Review.  Thereafter, defenants Threm and Horel affixed their signatures to the document, thereby joining in his denial of the relief sought in the appeal, including plaintiff's request that defendants Patterson and Jackson comply with the rules and regulations of the Director of Corrections.  (See Exhibit 1, §§ B and E, and attached page entitled "SECOND LEVEL REVIEW").

97.  Defendants Threm and Horel knew, or reasonably should have known, based on the numerous complaints, both verbally and written, against defendants Patterson and Jackson, that plaintiff was being subjected to an on-going pattern of harassment and reprisals, that plaintiff's religious property was legally obtained through the approved procedure for in-coming inmate mail, and that the destruction of his religious property by defendant Patterson was just one more act in the overall pattern of harassment and reprisals he and defendant Jackson had been subjecting plaintiff to.  Such knowledge should have served to bolster the credibility of plaintiff's claims of harassment and reprisals, and defendants Threm and Horel should therefore have taken appropriate steps to fairly and impartially remedy the problem.

98.  Instead, defendants threm and Horel made themselves complicit in the cover up, and party to the conspiracy to harass and take reprisals against plaintiff by joining with defendant Patterson to deprive plaintiff of his properly obtained religious items.  (Refer Exhibit 1, ibid.).  Plaintiff incorporates by reference, the allegations set out in Exhibit 1 and the attachments thereto, in their entirety.

99.  Defendants Threm and Horel failed to enforce and follow the rules and regulations promulgated by the Director of the CDCR as alleged above.

100.  On September 4, 2007, enclosed this appeal in an addressed, pre-paid stamped

envelope and placed it in his cell door for pick up and posting in the U.S. mail in accord with the regular procedure established at Pelican Bay State Prison for out-going inmate mail.  The envelope was addressed to the Director of Corrections, attention Chief, Inmate Appeals.

101.  On September 11, 2007, during the regular evening mail distribution, the appeal was returned to plaintiff, still enclosed in the same addressed, stamped envelope with no explanation for why it was returned, nor where it had been in the interim.

102.  On September 12, 2007, plaintiff again placed the appeal in his cell door to re-send it to Sacramento for Director's Level Review.

103.  On October 23, 2007, defendant Grannis screened out the appeal and returned it to plaintiff, stating that the appeal was not received within 15 working days after the previous level of review.  (See Exhibit 1, attached document labeled "INMATE APPEAL BRANCH").

Wherefor, plaintiff move this court to grant the relief prayed for.


DATED:  December 16, 2007.                    Respectfully submitted,

                                              Khalif Lateef,
                                              Plaintiff in pro per

**EXHIBIT 1**

*ITEMS DISPLAYED OF IN CELL SEARCH*

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region          Log No.          Category

1. **PBSP**  A-07-01190                                     5/11

2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| La Von Haney | C-52678 | PBSP | A5-106 |

**A. Describe Problem:** This is a Staff Complaint pursuant to CCR Title 15 § 3391, to seek just compensation for the destruction of appellant's religious artifacts & pictures. Title 15, § 3210, provides for the accommodation of religious and spiritual well fare of all interested prisoners. C/o W. Patterson disrupted & interfered with appellant's spiritual interests and practices. Specifically, on 4-22-07, c/o W. Patterson, 2/watch, "B" Building, came to 5 Building as part of a search team. He chose to search cell A5-106, to which appellant is assigned. (See attached Cell Search Worksheet). During the course of the search, Patterson removed appellant's religious artifacts & pictures from the walls and

If you need more space, attach one additional sheet.          (CONTINUED ATTACHED PAGE)

*PELICAN BAY
G.P. UNIT A-3*

**B. Action Requested:** 1) Replacement of the described pictures & artifacts; 2) replacement of similar pictures & artifacts if the original ones cannot be recovered; 3) just compensation in the amount of $50.00 if said pictures & artifacts cannot be replaced or duplicated; 4) compliance with CCR Title 15, § 3110, et seq.

Inmate/Parolee Signature _La Von Haney_          Date Submitted: 4/26/07

**C. INFORMAL LEVEL** (Date Received: 5-11-07)

Staff Response: Appeal Denied. Items of Religous Content are Not To be displayed or attached To The walls. Those items were removed from the walls. Pages removed from Magazines or Copies of Pictures are Contraband. Therefore The items were Confiscate Because No Proof of ownership could be verified because The items were changed from The original specifacations. The items were destroyed; Per Institutio procedure.

Staff Signature: C/o W. Patter          Date Returned to Inmate: 5-21-07

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

This 1st SC Complaint alleges an on-going series of harassment which, in this case, was in the form of destroying appellant's religious emblems, symbols & icons herein described. Patterson admits he did, in fact, destroy the items; appellant wants the action requested, and for Patterson to stop harassing him.

Signature _La Von Haney_          Date Submitted: 5/23/07

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

APR 27 2007    MAY 0 4 2007    MAY 2 4 2007    JUL 0 5 2007    SEP 1 3 2007 TO JAB

26          26          1ST AW-6P          2ND APPEAL

30

First Level   ☐ Granted   ☐ P. Granted   ☑ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _5-24-07_   Due Date: _7-09-07_

Interviewed by: _Sgt J McMillen_

Noted RMAby FC

Staff Signature: _J McMillen_   Title: _Sgt_   Date Completed: _6-18-07_

Division Head Approval: _M.A. Cox_   

Signature: _____   Title: _AWGP_   Returned Date to Inmate: **JUN 2 6 2007**

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_These 33⅓ degree icons, symbols, and emblems were received through the mail per Title 15, sects 3130, 3131, 3132, 3136, 3138(a)(b)(f)(i)(2), 3147 et seq., and as such were pre-approved prior to forwarding to appellant. If not approved, they should have been disallowed per 3147(a)(c), et seq. Harassment; refer section 3391._

Signature: _Dalvin Denny_   Date Submitted: _7/4/07_

Second Level   ☐ Granted   ☐ P. Granted   ☑ Denied   ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _7-5-07_   Due Date: _8-2-07_

☑ See Attached Letter

Signature: _N Theen CCII_   Date Completed: _7-18-07_

Warden/Superintendent Signature: _____   Date Returned to Inmate: _8-10-07_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_The items in dispute were received through the prison mail room, whose screeners inspected the contents of the envelope per PBSP policy, approved them and forwarded them to appellant. Hence, they were approved items. The C/O of whom this complaint is submitted, acted as a means of continuing to harass appellant in an ongoing series of harassment. Seek Director's Level Review & investigation._

Signature: _Dalvin Denny_   Date Submitted: _8-4-07_

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

0708936

## INMATE APPEAL CONTINUED:

and, according to the cell search sheet, "disposed" of them.

What Patterson has described as "paper" on the search sheet, was actually an Islamic Flag (the Star & Crescent on a red background, symbolic of the Sun), with the words "In The Name Of Allah;Nation Of Islam," clearly written around it in bold script lettrs, and pictures of Master Fard Muhammad, The Honorable Elijah Muhammad, The Honorable Minister Louis Farrakhan, and Mother Khadijah Farrakhan, the First Lady Of Islam--all internationally known and highly recognized spiritual Leaders and governing Heads of the Nation Of Islam.

Appellant believe this was a deliberate act of religious bigotry. It should be noted that appellant was moved from H.U. 4 and assigned to H.U. 5 by Sergeant Strickland at appellant's own request, specifically because he was being subjected to an on-going series of this same type of harassment by Patterson & his 2/w Floor Officer partner, c/o B. Jackson, while housed in H.U. 4. This is the 3rd Staff Complaint that appellant has been forced to submit on these two officers, concerning either one or the other of them damaging, defacing and/or disrespecting his religious items. Now, here comes Patterson way over to HU 5 continuing this same kind of harassment despite being assigned to HU 4.

Out of all the c/o's comprising the HU search team that day, c/o Jackson went out of his way to be the officer to strip search appellant, and Patterson went out of his way to be the one to search appellant's cell and in the process, to destroy, or "dispose" of, appellant's religious property.

Appellant want these two officers to stop seeking him out for harassment purposes.

32

# PELICAN BAY STATE PRISON
## CELL SEARCH WORKSHEET

DATE _4-22-07_                                    TIME _1030_

CELL NO. _106_    ASSIGNED TO:  (U) _Means_    C.D.C. # _F 37660_
                               (L) _HANEY_     C.D.C. # _C 52678_

| | | |
|---|---|---|
| | _w. Patters_ | |
| **SERGEANT/POSITION** | **C.OFFICER/POSITION** | **C.OFFICER/POSITION** |

CONDITION OF CELL: _____

_____

### APPLIANCE INSPECTION

| | | | | |
|---|---|---|---|---|
| TELEVISION _Haney_ | SERIAL # _Su 0390_ | WORKING _✓_ | NOT WORKING | |
| TELEVISION _Mean_ | SERIAL # _5944_ | WORKING _✓_ | NOT WORKING | |
| RADIO/CASS | SERIAL # | WORKING | NOT WORKING | |
| RADIO/CASS _Haney_ | SERIAL # _C73C_ | WORKING _?_ | NOT WORKING | |
| OTHER _Typewriter_ ✓ | SERIAL # | WORKING _✓_ | NOT WORKING | |
| OTHER | SERIAL # | WORKING | NOT WORKING | |

COMMENTS: _Cassette not checked_

PELICAN BAY G.P. UNIT A-3

### ITEM(S) CONFISCATED DURING SEARCH

| ITEM DESCRIPTION | LOCATION IN CELL | DISPOSITION |
|---|---|---|
| _Paper plastic_ | _Risponde shelves_ | _dispose_ |
| _Bottle's_ | _" BWalls_ | _"_ |

### CDC-115 ISSUED

FOR _____    WRITTEN BY: _____    POSITION: _____

FOR _____    WRITTEN BY: _____    POSITION: _____

| | | |
|---|---|---|
| **CELL-LAYOUT** | **DATE SEARCHED** | **SEARCHED BY** | **COMMENTS** |



Cell layout diagram: OVERHEAD LIGHT, SHELF, REAR WINDOW, UPPER BUNK, SINK TOILET, DESK, SEAT, LOWER BUNK, STORAGE

#### NOTE

CELL SEARCHES ARE NOT INTENDED AS PUNISHMENT. SUPERVISORY STAFF SHALL BE RESPONSIBLE FOR ENSURING ALL STAFF RESPECT IN-MATES PROPERTY DURING ANY CELL SEARCH, AND PROPERLY DOCU-MENT ALL ITEMS CONFISCATED. A COPY OF THIS WORKSHEET WILL BE GIVEN TO THE CELL OCCUPANT WHEN THE SEARCH IS COMPLETED.

State of California Case 5:08-cv-00651-JW    Document 1-3    Filed 01/28/2008 led and Corr age 6 of 18 n and Rehabilitation
CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

NAME: **HANEY**                    CDC #: **C52678**    HOUSING: **A5 106**

## YOUR APPEAL IS BEING RETURNED FOR THE FOLLOWING REASON(S):

[X] 4. In violation of the CCR, Title 15, Sections 3084.2(b), 3084.3(c)(4) & 3084.5(a)(1), you failed and must attach evidence that shows you attempted to get an Informal resolution, prior to the appeal being assigned to the Formal Level(s) of appeal review. If a staff member fails to respond after 10 working days, use the Chain of Command and submit the Appeal to that staff member's supervisor, or unit/area supervisors.

[ ] Counselor          [ ] PBSP R&R          [ ] Med Clinic        [ ] Records
[ ] Unit Officer       [ ] PSU Property      [ ] Dental Clinic     [ ] Inmate Assignments
[ ] Mail Room          [ ] PBSP SHU Prop.    [ ] Psych Office      [ ] PBSP Trust Office
[ ] Law Library        [ ] Food Services     [ ] Med Records       [ ] Plant Ops.
[ ] Work Supervisor                          [X] Other **C/O PATTERSON**

[ ] 5. You have not adequately completed the CDC Form 602, or have not attached the proper documents. Follow instructions and attach the items noted below, send what documents you have, or explain why they are not available per the CCR, Title 15, Section 3084.3(c)(5):

[ ] Supporting Documents & Receipts          [ ] CDC 1845 Disability Verification
[ ] GA 22 Request For Interview              [ ] CDC 1824 Reasonable/Accommodation
[ ] CDC 115 Results With final dispo         [ ] CDC 7362 Health Care Required Co-Pay
[ ] CDC 115 IE/DA information/Report         [ ] CDC 128-C Medical Chrono
[ ] CDC 115 Supplemental Reports             [ ] Cell Search Slip
[ ] CDC 114-D Lockup Order                   [ ] Property Inventory Receipt
[ ] CDC 1030 Confidential Disclos            [ ] CDC 143 Property Transfer Receipt
[ ] Lab Results Sheet                        [ ] Package Inventory Slip
[ ] CDC 7219 Medical Re                      [ ] Proof of Ownership/Value
[ ] CDC 128-A                                [ ] More Specific Information
[ ] CDC 128-B                                [ ] Trust Statement
[ ] CDC 128-G                                [ ] CDC 193 Trust Acct Withdrawal Order
[ ] CDC 629A/629B Assess SHU Term            [ ] Legal Status Summary
[ ] CDC 812/A/B Critical/Enemy               [ ] Abstract of Judgment (AOJ)
[ ] CDC 839/840 Class/Reclass Score          [ ] CDC 1858[PC 148.6/CCR 3391(d) Info.Advis.
[ ] CDC 958 Restoration Request              [ ] Emerg. Unwarranted CCR 3084.7(a)(2)(A)
[ ] CDC 1819 Correspondence Denial           [ ] Failed to Complete Section _____
[ ] Other _____    [ ] Sign & Date Section _____
                                             [ ] CDC Form 602 _____

*(watermark: PELICAN BAY G.P. UNIT A-3)*

[ ] 7. The issue has been resolved, PBSP Appeal Log No. _____. A copy of the Second (Warden's) Level of Appeal review is attached per the CCR, Title 15, Section 3084.2(g)(1)(2(3).

[ ] 8. Abuse of the appeal procedure: _____

Comments: **YOUR APPEAL WAS NOT ACCEPTED AS A STAFF COMPLAINT. AT THIS POINT, IT IS CATEGORIZED AS A PROPERTY ISSUE. INFORMAL RESPONSE NECESSARY FOR FURTHER PROCESSING.**

*C. Wilber (signature)*                MAY 0 1 2007
                                       MAY 0 7 2007
C. E. WILBER                           Date
Appeals Coordinator

This screening action may not be appealed unless the above reasons are inaccurate and the inmate can provide supporting arguments against the screening decision.
**PERMANENT APPEAL ATTACHMENT  -  DO NOT REMOVE**

APR 2 7 2007                PBSP    (Rev. 11/06)    CCR 3084.3(d)    PBSP

MAY 0 4 2007

34

To: Appeals Coordinator

From: Harvey, C-52678, A5-106

Date: May 3, 2007

Re: Enclosed Appeal:

This appeal PELICAN BAY G.P. UNIT A-3 a Staff Complaint alleging misconduct by a departmental peace officer. As such, it is exempt from informal level reply per Title 15, Sect. 3084.5 (a)(1)(G).

Respectfully,

Calvin Harvey

35

# FIRST LEVEL APPEAL RESPONSE

**DATE:** June 18, 2007
**APPEAL LOG NUMBER:** PBSP- A-07-01190
**INMATE:** HANEY
**CDC NUMBER:** C52678
**APPEAL DECISION:** **DENIED**

**APPEAL ISSUE:** (Modified)

You are requesting be compensated for religious pictures and artifacts that were disposed of during a cell search.

**APPEAL RESPONSE:**

A review of your appeal has been completed. Your complaint, including your requested remedial action, has received careful consideration.

On Monday, June 18, 2007 Sergeant J. McMillan interviewed you concerning the contents of your appeal. During the course of this interview you reiterated essentially the same issues and information contained in your appeal. During the course of this interview you provided a cell search receipt stating that the artifacts that were disposed during a cell search.

**DETERMINATION OF ISSUE:**

You have provided inadequate evidence to verify that the items were religious artifacts provided by chaplain staff. The Officer that was identified of disposing the item states that the items were pages removed from books and magazine, which classifies them as contraband. California Code of Regulations Title 15 Section 3213 subsection (a) States that written approval of the institution head or designee shall be required for the following: (1) Any person to bring in any religious artifact into a facility. (2) For an inmate to be provided any religious artifact. It is reasonable to believe that the Officer was performing his assigned duties in accordance within policy. However, inmate HANEY does not have any form of written approval to have a religious artifact within the facility. Based on these facts your appeal is **DENIED** at the first Level of Review.

K. L. McGUYER
Facility Captain
Facility A

M. A. COOK
Associate Warden
General Population

*36*

| PELICAN BAY STATE PRISON |
|:---:|
| SECOND LEVEL REVIEW |

DATE: **JUL 2 4 2007**

Inmate HANEY, C52678
Pelican Bay State Prison
Facility A, General Population
Building 3, Cell 129

RE: WARDEN'S LEVEL DECISION                    APPEAL: DENIED
    APPEAL LOG NO. PBSP-A-07-01190              ISSUE: PROPERTY

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP). On June 18, 2007, Correctional Sergeant J. McMillan conducted the interview at the First Level of Review.

## ISSUES

Inmate Haney requests replacement or monetary compensation for religious pictures and artifacts that were disposed of during a cell search.

## FINDINGS

### I

The inmate alleges in his appeal that Correctional Officer W. Patterson removed his religious artifacts and pictures from the walls of his cell and disposed of them. The inmate alleges that this was a deliberate act of religious bigotry.

### II

The inmate was dissatisfied with the First Level Response, stating that the icons, symbols and emblems were received through the mail and as such were approved prior to forwarding them to him.

## DETERMINATION OF ISSUE

The California Code of Regulations (CCR), Title 15, Section 3006, Contraband, states in part, "*Inmates may possess only the personal property, materials, supplies, items, commodities and substances, up to the maximum amount, received or obtained from authorized sources, as permitted in these regulations. Possession of contraband as defined in section 3000 may result in disciplinary action and confiscation of the contraband.*"

The Department Operations Manual (DOM), Section 54030.10.11, Contraband, states in part "*Anything not permitted or in excess of the maximum quantity permitted or no longer functioning as designed or that have been modified or tampered with or which is received or obtained from an*

Supplement Page 2
HANEY, C52678
Appeal # PBSP-A-07-01190

*unauthorized source is contraband.  Possession of contraband may result in disciplinary action and confiscation of the contraband (CCR 3006)."*

The CCR, Title 15, Section 3213, Stipulations Regarding Religious Artifacts, Sanctuaries, and Sacramental Wine, states in part, *"(a) Prior written approval of the institution head or their designee shall be required for the following...(2) For an inmate to be provided any religious artifact."*

The DOM, Article 43-Inmate Property, Section 54030.10.9, Religious Items, states in part, "Personal religious items may be authorized as described in, but not limited to, Section 53050... Religious items are subject to approval by designated custody staff and the institutional chaplain."

The Operational Procedure No. 806, Inmate Personal Property Plan, VI. Methods, 3. Religious Items, states in part, *"All religious items are subject to approval by the institutional Chaplain and designated custody staff...It is the intent of the California Department of Corrections and Rehabilitation that inmates of all recognized religious faiths will be unrestricted in their religious beliefs.  However, this in no way limits the Department's ability to restrict religious practices, when such restrictions are necessary to the furtherance of legitimate penal interests."*

The Cell Search Worksheet, dated April 22, 2007, reflects that paper, plastic, and bottles were removed from shelves and walls and were confiscated and disposed of as contraband.   Officer Patterson states in the Informal Level Response that the items of religious content that were displayed and attached to the walls were removed.  The items were changed from their original specifications as pages were removed from magazines.

The inmate has the right to religious beliefs, in whatever form he perceives them.  The institution will continue to make a reasonable effort to provide for the religious welfare of its inmate population.  However, the statement from Officer Patterson and the Cell Search Worksheet indicate that the items in question were appropriately deemed contraband and disposed of in compliance with policy.  The inmate has failed to provide evidence that he has written approval for any religious artifact and that this artifact was inappropriately removed and disposed of during the cell search. This APPEAL IS DENIED.

## MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

NAT # 24        Date 07/18/07

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION    ARNOLD SCHWARZENEGGER, GOVERNOR

### *INMATE APPEALS BRANCH*

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

October 23, 2007

HANEY, LAVON, C52678
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA  95531-7000

RE: IAB# 0708836    PBSP-07-01190    PROPERTY

Mr. HANEY:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal.  The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal.  The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses.  Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process.  The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

An appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving a lower level decision in accordance with CCR 3084.6(c).

*U. Brani*

N. GRANNIS, Chief
Inmate Appeals Branch

---

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

**EXHIBIT 2**

.~IA

DEPARTMENT OF CORRECTIONS

E/PAROLEE

AL FORM

_2 (12/87)

Location:  Institution/Parole Region

1.          TPBSP

2. _____

Log No.

1. _____

2. _____

Category

5 property

confiscated if

Oil

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents a not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| La Von Haney | C-52678 | Pelican Bay State Prison | A5-108   A |

**A. Describe Problem:** On February 4, 2004, appellant's cell was searched as part of the general search of the institution associated with the current lockdown resulting from an alleged staff assault. Appellant's cell was searched by c/o Jackson. (see enclosed "Cell Search Worksheet/Receipt). Among the items confiscated during the search was appellant's Muslim Prayer Oil which he legally obtained and possessed in accordance with the rules set for special religious property. (see enclosed chrono). Appellant's prayer oil was in a plastic container with approximately one quarter of the oil remaining in said container. Appellant also had other items in plastic containers that was taken, such as cleaning supplies (disinfectant, borox, etc.). c/o Jackson did not spell out what was in the containers, but simply lumped everything together under the general heading "Plastic containers." Appellant attempted to contact c/o Jackson to show him the chrono approving possession of the prayer oil and resolve this matter informally. C/o Jackson was unresponsive to this effort.

If you need more space, attach one additional sheet.

**B. Action Requested:** 1) return of appellant's prayer oil or compensation therefor in accordance with CCR Title 15, § 3193(b); 2) compliance with Title 15, § 3190(a), and; 3) stop staff who hates muslims and discriminate against them from searching Muslims' living quarters, as such staff members repeatedly destroy and confiscate more property and items than is necessary to the safety and security of the prison--they do it just because they hate Muslims and seek to harass them.

Inmate/Parolee Signature: _____     Date Submitted: 2/5/04

**C. INFORMAL LEVEL** (Date Received: 02-05-04   )

Staff Response: On February 4, 2004 at approximately 0700 hrs, I searched cell A5-108, solely occupied by Inmate Haney, C-52678, A5-108. I did confiscate plastic containers just like the cell search worksheet/receipt states. The plastic containers that I confiscated contained a substance that was not in the container it was purchased or the container did not state clearly what was in the container. By altering the container or

SEE ATTACHED PAPER →

Staff Signature: _____     Date Returned to Inmate: 02-26-04

**D. FORMAL LEVEL**

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

4   NO#BR

FEB 06 2004

CONT'D FROM (602) LOC #32 FEB 06 2004
THE CONTINENCE OF THE CONTAINER, MAKES IT CONTRABAND, CONTRABAND
IS NOT ALLOWED AT PELICAN BAY STATE PRISON. SO IF I DID
CONFISCATE YOUR PRAYER OIL, IT WAS NOT IN A CLEARLY MARKED
OR LETTERED CONTAINER.

42

**EXHIBIT 3**

PELICAN BAY STATE PRISON
<u>CELL SEARCH WORKSHEET / RECEIPT</u>

DATE: 21 June 05                                          TIME: 1820

CELL: 217    ASSIGNED TO:    (U):_____    CDC#:_____

(L): HANEY    CDC#: C-52678

SEARCHED BY:

C/O B. JACKSON    B. Jackson

PRINT NAME    SIGNATURE    PRINT NAME    SIGNATURE

## CONDITION OF THE CELL:

CLEAN [ ]    DIRTY [ ]    NEAT [ ]    CLUTTERED [X]

COMMENTS: DIRTY CELL, HE HAD ALL HIS ISSUE OF CLOTHING
BUT TWO FACE CLOTHS

APPLIANCE INSPECTION

| | PROPERTY OF: | | | |
|---|---|---|---|---|
| Television | _____ | Serial #_____ | Working [ ] | Not Working [ ] |
| Television | _____ | Serial #_____ | Working [ ] | Not Working [ ] |
| Radio / Cassette | _____ | Serial #_____ | Working [ ] | Not Working [ ] |
| Radio / Cassette | _____ | Serial #_____ | Working [ ] | Not Working [ ] |
| Other | _____ | Serial #_____ | Working [ ] | Not Working [ ] |

COMMENTS:_____

## ITEMS CONFISCATED DURING SEARCH

| Description | Location in Cell | Disposition |
|---|---|---|
| 5 ALTERED SHORTS | LOWER BED | LAUNDRY |
| 3 ALTERED TOWELS | FLOOR, LOWER SHELF | TRASH |
| 1 ALTERED T-SHIRT | WINDOW DESK | _____ |
| EXCESS BLUE SHIRT | _____ | _____ |
| BOWL, CAP, FRUIT | _____ | _____ |
| CARDBOARD, PLASTIC CONTAINER, WIRE, PLASTIC BAGS (STATE) (ALTERED) | | |

DISCIPLINARY DOCUMENTATION:

[ ] CDC-115    For:_____    Officer:_____

[ ] CDC-128A    For:_____

Cell searches are not intended as punishment. Staff are responsible for ensuring they respect inmates
property during searches. Staff are to properly document all items confiscated during the search and

**EXHIBIT 4**

MULTI-PURPOSE WORKSHEET FOR INMATE CONDUCT/INFORMATION DOCUMENTATION

Date 804 sent to Records _____    Date 804 sent to

Records: _____

☐ CDC-115 ........ DISCIPLINARY

☐ CDC-115-C .... SUPPLEMENTAL

☐ CDC-128-A .... COUNSELING

☑ CDC-128-B .... INFORMATIVE

| NAME #1: HANEY | NAME #2: |
|---|---|
| CDC#: C-52678 | CDC#: |
| CELL# AT TIME OF OFFENSE: A3-217 L | CELL# AT TIME OF OFFENSE: |
| RELEASE TYPE & DATE: | RELEASE TYPE & DATE: |
| 115/837 LOG#: | 115/837 LOG#: |

COMPLETE FOR CDC-115 / 128-A ONLY

| VIOLATED RULE#: (ONE RULE ONLY) | SPECIFIC CHARGE: | DISCOVERY DATE: | DISCOVERY TIME: | HOURS |
|---|---|---|---|---|
| LOCATION OF OFFENSE: | | AD/SEG DATE: | AD/SEG CELL#: | |

On 06-21-05 , at approximately 1900 Hours, while I was assigned as A3 FLOOR OFFICER #2, I WAS

INSTRUCTED BY SGT L. THOMPSON TO CONDUCT A LAUNDRY SEARCH OF CELL A3-217
SOLELY OCCUPIED BY ILE HANEY C-52678, A3-217. ILE HANEY HAD IN HIS
CELL 3 PAIRS JEANS, 3 SHIRTS BLUE CHAMBRAY, 4 PAIRS BOXERS WHITE, 2 PAIRS
SOCKS, 1 WATCH CAP, 3 T-SHIRTS WHITE, 2 LAUNDRY BAGS, 1 JACKET NAVY
WIND BREAKER, 2 COTTON WHITE BLANKETS, 4 SHEETS WHITE, 2 PILLOWCASES
2 TOWEL BATH, 1 PAIR SHOES SNEAKER, 1 RAIN COAT YELLOW. ILE HANEY
WAS FOUND TO BE SHORT, 2 WASHCLOTHS, 4 PAIRS SOCKS, I INFORMED SGT
L. THOMPSON OF WHAT I FOUND.

IT SHOULD BE NOTED I FOUND 5 ALTERED SHEETS WHITE $2.11 EACH
TOTAL COST $10.55. 3 ALTERED TOWEL BATH .70 EACH TOTAL COST $1.40.
1 ALTERED T-SHIRT $3.50 EACH TOTAL COST $3.50. TOTAL SUM
OF ALL ALTERED STATES IS $15.45.

☐ Continued (See Attached):

| REPORTING EMPLOYEE NAME (PRINT): BR Jackson | TITLE: C/O | NOTE: SUPERVISORS MUST REVIEW ALL REPORTS PRIOR TO SUBMISSION FOR TYPING.    TYPISTS: CHECK FOR SUPERVISOR APPROVAL. |
|---|---|---|
| POST#: 261303 | RDO: F/S | WATCH: (CIRCLE ONE) 1 ② 3 | REVIEWED BY: (NAME / TITLE) |
| | | | ☐ Approved |

EXHIBIT 5

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

STAFF COMPLAINT
PBSP

1. A06 00933    Category 1

c/o B Jackson

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

LAVON

| NAME HARVEY LEVONE Street (aka Harvy) | NUMBER C52678 | ASSIGNMENT 2B39 | UNIT/ROOM NUMBER A4-126L |
|---|---|---|---|

**A. Describe Problem:** This is a staff complaint pursuant CCR Title 15, Sect. 3391(a)(d): Appellant has a lower tier/lower bunk chrono that he has attempted to get honored for several months. Despite making numerous proposals that would have placed appellant in the position his medical chrono prescribes, C/o B. Jackson denied the requested cell moves and instigated other A.W.4 staff to deny any requested cell moves if Jackson himself was not on duty. C/o Jackson did this because he did not want to

If you need more space, attach one additional sheet.                                    (see attached page)

**B. Action Requested:** 1) Property & privileges given as entitled to prisoners in Privilege Group B; 2) instruct Jackson to stop harassing appellant & instigating other staff to conspire with him; 3) an investigation per 3391(d); 4) A LOI in Jackson's file; 5) Compliance with CCR Title 15 as cited herein.

Inmate/Parolee Signature: _Lavon Harvey_                     Date Submitted: 4/27/06

**C. INFORMAL LEVEL** (Date Received: _____)

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

INMATE APPEALS BRANCH
AUG 31 2006
RECEIVED

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

TO FOLLOW MM 4/28/06    1SAW GP MAY 0 8 2006    2 NLY APPEALS JUN 2 6 2006

48

**STAFF COMPLAINT**

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

PBSP

1. A06 00933

Category

c/o B. Jackson

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

LAVON

| NAME HARVEY LEVONE Street (aka Harvey) | NUMBER C52678 | ASSIGNMENT PBSP | UNIT/ROOM NUMBER A4-126L |

**A. Describe Problem:** This is a staff complaint pursuant CCR Title 15, Sect. 3391(a)(d): Appellant has a lower tier/lower bunk chrono that he has attempted to get honored for several months. Despite making numerous proposals that would have placed appellant in the position his medical chrono prescribed, c/o B. Jackson denied the requested cell moves and instigated other S.U. 4 staff to deny any requested cell moves if Jackson himself was not on duty. C/o Jackson did this because he did not want to

If you need more space, attach one additional sheet.

(see attached page)

**B. Action Requested:** 1) Property & privileges given as entitled to prisoners in Privilege Group B; 2) instruct Jackson to stop harassing appellant & instigating other staff to conspire with him; 3) an investigation per 3391(d); 4) A LOI in Jackson's file; 5) Compliance with CCR Title 15 as cited herein.

Inmate/Parolee Signature: _Lavon Harvey_    Date Submitted: 4/27/06

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: _____

INMATE APPEALS BRANCH AUG 31 2006 RECEIVED

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim.

CDC Appeal Number: _____

TO PBSP 4/28/06    1st 4/8 MAY 0 8 2006    2ND APPEALS JUN 2 6 2006

 48

*Appeal Continued*

move appellant only, but wanted to force his then cellmate, inmate Jones, to move as well. Both Jones and appellant had been exceeding clear that they did not want to be moved together. Appellant wanted his lower bunk/lower tier accommodation, and Jones wanted to stay where he was [cell A4-232]. Jackson was determined not to allow that. In fact, on 4-20-06, Jones returned to the A.U. and asked C/o Campbell about allowing appellant to find a lower tier/lower bunk cell in the A.U. and C/o Campbell (who wasn't aware of Jackson's plot of harassment at the time) agreed. However, C/o Marshall then interjected, telling Campbell not to do it because Jackson had a plan to switch appellant AND Jones with the inmate in cell A4-126. None of the prisoners knew anything about such a move until Marshall let it slip out in front of Jones.

On 4-25-06, the A-Facility Yard Sergeant gave appellant permission to go around to the Housing Units to see if he could find a lower bunk/lower tier accommodation in any of them. That is Standard Operating Procedure. When the Sgt. notified Jackson that he had given his permission for appellant to do that, rather than comply, Jackson went over the Sgt.'s head and manipulated Lt. Terry into becoming involved and having a 154 typed, swapping appellant & Jones from 232 to 126. This was done without any of us knowing about it or agreeing to it, in violation of cell move procedures. Jones and appellant were told that they would be "blown out of there" if they didn't comply with the forced move. Appellant asked what did that mean, and was told it meant he would be gassed & forcibly removed. Appellant packed his property and carried it to the lower tier, after which he told C/o Patterson that they could put appellant in Ad. Seg. or whatever, but that he was not going into cell 126 under the unagreeable conditions that Jackson had created. Patterson ordered appellant to "cuff up" and escorted him to the facility holding cell. It was approximately 1400 hrs at the time (Third Watch was coming on duty). Approximately 1-2 hours later, appellant was released back to A.U. 4 without escort, without restraints, and finally given lower tier/lower bunk accommodations without inmate Jones

(OVER)

50

being forced into the same cell with him. Appellant was never placed in ad. seg., put on C-status, or any other form of restricted programming. As such, appellant's personal property should have been given back to him upon his return to the Unit. Instead, C/o Sawaya informed appellant that Jackson instructed him to "inventory" the property first. This was obviously a thinly disguised ruse invented to harass appellant by depriving him of his property. Since he was not on C-Status, had not been to ad. seg., the SHU, or serving a period of disciplinary ▓▓▓ detention of any kind, there was no logical reason to "inventory" appellant's property other than to keep it from him. C/o Sawaya & C/o Campbell finished the inventory at approx. 9:45 p.m. (C/o Campbell brought appellant's medication at that hour, and informed him that the inventory was completed and that the property would be given back 4-26-06, by either 2nd or 3rd watch).

On 4-26-06, instead of returning the property, Jackson decided to harass appellant further. He "reinventoried" the property and invented excuses for confiscating some of appellant's cosmetics as "altered" when they weren't (how do you alter hair crease?), and to dispose of appellant's night lamp as "broken" when it was in fact working perfectly. After all of that, he still refused to return the property, stating that he was keeping it in retaliation for appellant's initial refusal to enter cell 126. Jackson's actions are in violation of 3391(a), 3044(3)(E), and 3190(a)(c)(2)(6)(7)(i). Jackson claimed that his supervisor (Program Sgt, 2nd/w) told him to violate Title 15 in this way, despite knowing appellant is in Privilege B, and entitled to all the privileges that group confers.

On 4-26-06, Third watch, C/o Campbell stated that Jackson said he was the only one who could return appellant's property. On 4-27-06, C/o Patterson stated that Jackson was the only one who could return the property. C/o Marshall stated the same. It is clear that this is a C/o Jackson organized program of harassment, abuse of authority, and violation of rules as cited above. Apparently, Jackson has been allowed to stay in H.U.4 for so long, exempt from the rotation that other officers are subject to, that he feels he owns the Housing Unit & people in it, and can make his own rules & interpretations of Title 15 as it suits him, regardless of due process requirements. He (Jackson's) is again violating appellant's right to due process with respect to his arbitrary actions.

51

## "F" CONTINUED

a cell search, and; 3) the "Investigator" has attached documents which he has character-
ized as "prior Rules Violation Reports concerning property issues" when, in fact,
the documents are NOT Rules Violation Reports concerning property issues, and when
no such legitimate RVR's even actually exist.

This Staff Complaint is about a forced cell move rooted in harassment to avoid
accommodating appellant's lower bunk/lower tier medical chrono in the way the move
had been repeatedly requested, appellant's initial refusal to comply with that forced
move, and the taking of ALL appellant's property after he had packed it and placed
it on the lower tier, and keeping said property for over a week (from April 25, 2006
to May 4, 2006), while Jackson went through it and took items for the sole purpose
of taking reprisals against appellant and harassing him. (See attached STAFF COMPLAINT
Log No. A06-0933).

Appellant does not claim to be the "sharpest knife" in the drawer, but anyone
who reads the above referenced STAFF COMPLAINT with even a modicum of understanding
and willingness to be an impartial trier of facts, will readily agree that the com-
plaint is about harassmnet and abuse of authority--not about cell searches.

In his response under the heading "FINDINGS," the so-called "investigator" claims
that he interviewed appellant on 5/21/06, and that appellant presented "no new inform-
ation or facts," and subsequently states "No other witnesses was named in this com-
plaint." Both claims are highly misleading.   (See attached First Level Response).

What the so-called "Investigator" characterizes as an "interview," was actually
nothing more than him approaching the cell, asking if there was anything else
appellant wanted to add and, upon receiving a negative response, turning and walking
away. He did not advise which 602 he was bringing to be addressed, did not proffer
said 602 for appellant to read and refresh his memory on, he did not ask for clarifi-
cation of any specific allegation, nor did he request any specific additional inform-
ation or facts. That is hardly the definition of an "interview." As for witnesses,
it is clearly a misleading claim for the so-called "Investigator" to assert that "No
other witnesses was named in this complaint." To the contrary--numerous witnesses
are herein named who had direct involvement with this incident. Apart from Jackson,
whom the "Investigator" made it a point to question, inmate Jones, Sgt. Rice (A-Facility
Yard Sergeant), c/o Paterson, c/o Campbell, c/o Sawaya, and c/o Marshall are all named
as role-players in this incident. The "Investigator" did not ask if appellant wanted
them called as witnesses, nor did he take it upon himself as a trier of fact to inter-
view them in light of the fact that each is named in the complaint. This action by
the so-called "INvestigator" is just further evidence of his lack of impartiality
in this matter.

Nextly, the so-called "Investigator" did not attach a single document that support
his claim that appellant has received "prior Rules Violation Reports concerning pro-
perty issues." (See First Level Response, and documents attached thereto). He has
attached documents which he has MISCHARACTERIZED as RVR's, but in fact, none are even
remotely disciplinary reports.

The first document he has attached is nothing more than a copy of just ONE SIDE
of a 602 that appellant filed over two years ago (2/5/04) while housed in Five Block,
concerning the IMPROPER confiscation of appellant's APPROVED Muslim Prayer Oil during
an INSTITUTION-WIDE facility search, which included all cells on the facility. The

52

so-called "Investigator" neglects to point out, however, that it was determined that jackson's confiscation of the prayer oil was <u>IMPROPER</u>, and that the sergeant who dealt with the complaint resolved the problem by <u>REPLACING</u> the wrongfully confiscated property, after which appellant agreed to <u>DROP</u> the appeal at that point. (See the <u>COMPLETE</u> 602--BOTH SIDES--in appellant's C-file where the so-called "Investigator" apparently got his <u>ONE-SIDED</u> copy from). This document is in nowise a RVR.

The second document he attached is a 128_ chrono, which was intended as mere documentation of a clothing check ordered by Sgt. L. Thompson on June 21, 2005, while appellant was housed in 3-Block, in response to appellant's complaint of a laundry shortage. It is merely an <u>INFORMATIVE CHRONO</u>, and is in nowise a disciplinary document as the so-called "Investigator" has attempted to portray it. (See attached paper marked "CDC-128-B...INFORMATIVE").

And finally, the third document attached by the so-called "INvestigator" is simply a copy of the receipt, documenting that appellant's cell was searched on the date the above described 128-B chrono was written, which is merely Standard Operating Procedure. The cell search receipt is also dated June 21, 2005, and said receipts are routinely issued every time staff conducts a cell search. It is in nowise a Rules Violation Report, nor does it indicate that a RVR was written as a result of the search conducted. (See attached Cell Search Receipt). Furthermore, as stated above, the "Investigator" not only did not attach any prior Rules Violation Reports concerning property, but he cannot produce any such legitimate RVR's involving property and c/o Jackson because no such incidents have ever occurred, and no such Rules Violation Reports exist.

Appellant seeks a resolution and determination of the issues based on allegations actually and specifically contained in this complaint, and not the <u>MISCHARACTERIZATIONS</u> of facts and <u>NON-EXISTANT</u> issues pulled from thin air and addressed by the so-called "Investigator" that is reflected in the attached First Level Response.

NOTE: Prior to receipt of the First Level Reviewer's Response on June 23, 2006, appellant received a CDC-115 written by the so-called "Investigator" himself, wherein he accuses appellant of filing an "UNFOUNDED" Staff Complaint against Jackson. That RVR has not yet been adjudicated, and had not been received as a "prior Rules Violation Report concerning property issues" at the time of the incidents complained of, and the subsequent proceedings in this matter.

FIRST LEVEL APPEAL RESPONSE

**DATE:**                      **May 21, 2006**
**APPEAL LOG NUMBER:**         PBSP-A06-00933
**INMATE:**                    HANEY
**CDC NUMBER:**                C-52678
**APPEAL DECISION:**           **DENIED**

**APPEAL ISSUE**:  (Modified)

Inmate HANEY is requesting an investigation into an allegation that Officer Jackson searched his assigned cell for harassment purposes, and confiscated property without cause.
**FINDINGS:**

An interview with Inmate HANEY was conducted on May 21, 2006 by Correctional Sergeant D. Coleman in A4 at approximately 0900 hours. HANEY reiterated essentially the same information that was contained in the appeal. No new information or facts were presented during the interview for consideration. Per protocol, I interviewed Officer Jackson regarding this matter. No other witness was named in this complaint.

In the event staff misconduct is sustained, the institution's Administration will take the appropriate course of action.  All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public, or the inmate population and will not be released to the inmate.  Although the inmate has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process.

**DETERMINATION OF ISSUE:**
All reports, documentation, and logs pertaining to this allegation have been thoroughly reviewed. The interview with inmate Haney revealed no new or viable information which would indicate the allegations brought forth were valid. At the interview, Officer Jackson presented the attached documentation: R&R Property list, cell search document listing confiscated items, and prior Rules Violation Reports concerning property issues. Officer Jackson has afforded inmate Haney the opportunity to mail out all excessive and unauthorized property confiscated. Officer Jackson was merely enforcing the policy and procedure at Pelican Bay State Prison regarding inmate property. The fact that inmate Haney was in violation of policy is well documented. It is also very apparent that Officer Jackson is enforcing Pelican Bay policy and procedure within the established guidelines, which enhances the safety and security of this institution. The allegations are without merit, therefore this appeal is **DENIED.**   Additionally, the following determination has been made that your allegations of staff misconduct are **UNFOUNDED.**

M.A. SMELOSKY                               M. COOK
Facility Captain                            Associate Warden
Facility A                                  General Population

54

| PELICAN BAY STATE PRISON |
|---|
| SECOND LEVEL REVIEW |

DATE:   AUG 0 4 2006

Inmate HANEY, C52678
Pelican Bay State Prison
Facility A, General Population
Building 4, Cell 106

RE: WARDEN'S LEVEL DECISION                      APPEAL: DENIED
     APPEAL LOG NO. PBSP-A-06-00933               ISSUE: STAFF COMPLAINTS

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP). Correctional Sergeant D. Coleman conducted the investigation and interview of this appeal issue.

### ISSUES

Inmate Haney requests that Correctional Officer (C/O) B. R. Jackson be instructed to stop harassing him and instigating other staff to conspire against him. Additionally, the inmate requests that C/O B. R. Jackson receive a Letter of Instruction.

### FINDINGS

#### I

The inmate alleges in his Appeal that C/O B. R. Jackson denied requests for cell moves, searched his assigned cell for harassment purposes, and confiscated property without cause.

#### II

The inmate was dissatisfied with the First Level Response stating that the investigator was biased and conclusions were not based on fact. The inmate states that the staff complaint is about a forced cell move rooted in harassment to avoid accommodating his lower bunk/lower tier medical chrono and the taking of all his property. The inmate alleges that C/O B. R. Jackson went though his property and took items for the sole purpose of taking reprisals and harassing him. The inmate contends that the investigator did not ask if he had witnesses or interview them. Additionally, the inmate disputes the attachments to the appeal.

### DETERMINATION OF ISSUE

In the *Report of Findings*, the investigator stated that the original CDC Form 1858, *Rights and Responsibility Statement/Information Advisory Staff Complaint/Peace Officer* had been misplaced and the inmate refused to sign a replacement CDC Form 1858. The Second Level Reviewer notes that the original CDC Form 1858 has been located and is attached to the *Report of Findings*.

All submitted documentation and supporting arguments have been considered. Additionally, a thorough review has been conducted into the claim presented by the inmate and evaluated in accordance with PBSP institutional procedures and departmental policies.

Supplement Page 2
HANEY, C52678
Appeal # PBSP-A-06-00933

All staff involved were appropriately noticed and interviewed. All staff personnel matters are confidential in nature. Information concerning such matters is not available in response to inquiries from the general public, inmate population, or other staff members. In the event of staff misconduct, the institutional supervisory and administrative staff would take the appropriate course of actions. However, this would remain confidential information and would not be released.

The thorough review of the allegations presented in the complaint was completed. The investigation concluded that staff involved acted within policy and procedural guidelines. The accusations against C/O B. R. Jackson have been deemed UNFOUNDED. Therefore, this appeal is DENIED.

MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

NAT # 11      Date 07/24/06

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: NOV 1 4 2006

In re:    Haney, C-52678
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0602647        Local Log No.: PBSP 06-00933

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that Correctional Officer (CO) B. Jackson abused his authority and denied the appellant a cell change, searched his cell in retaliation and as a means to harass the appellant, and confiscated the appellant's property without just cause. The appellant requests to be granted the privileges that he is entitles to, that CO Jackson stop harassing him, an investigation be completed, and that CO Jackson be issued a Letter of Instruction.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant has not been subjected to misconduct on the part of named staff. The reviewer affirms that appropriate supervisory staff has been assigned to conduct an inquiry into this matter. Correctional Sergeant D. Coleman reviewed the submitted material and interviewed the involved parties. Based upon developed information, it was determined that the allegation of staff misconduct was UNFOUNDED. In order to determine the facts, the inquiry arising from this appeal included his interview; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmate's or review of the appellant's central file. The First Level of Review (FLR) and Second Level of Review denied the appeal.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the FLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. The Director's Level of Review (DLR) notes that in this case the reviewer determined that the appellant's allegations were UNFOUNDED. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. In this case, the institution has reported the disposition to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Therefore no relief is provided at the DLR.

**B.  BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3000, 3001, 3004, 3391
Administrative Bulletin 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

**C.  ORDER:** No changes or modifications are required by the institution.

HANEY, C-52678
CASE NO. 0602647
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Appeals Coordinator, PBSP

EXHIBIT 6

A4-126

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. PBSP
2.

Log No: A06-01050    Category: 5/1
Non Allocable items
Confiscated WHEN Peop
1.
2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| L. Haney | C 52678 | PBSP | A4-126 |

**A. Describe Problem:** After appellant's personal property had already been "inventoried" by c/o's Campbell & Saugen on 4-25-06, c/o Jackson came behind them & "reinventoried" the property on 4-26-06. The sole purpose of Jackson's "inventory" was to harass appellant, deprive him of property items that he has legally purchased and possessed at PBSP for over 7 years, and to take all of appellant's property in the H.U. storage room in retaliation for his initial refusal to comply with an order from Jackson

If you need more space, attach one additional sheet.    (See attached page)

**B. Action Requested:** 1) That all documents Jackson tricked appellant into signing be rendered null & void, including papers authorizing mail out & disposal of property, and that an impartial party do a new independent inventory; 2) L.O.I. in Jackson's file; 3) Compliance with CCR, Sect. 3021 & 3391(a)

Inmate/Parolee Signature: L. Haney    Date Submitted: 5/1/06

**C. INFORMAL LEVEL** (Date Received: 05-02-06 )

Staff Response: On 04-25-06 your property was confiscated from you for failure to program at approximately 1380 hours. On 04-26-06 I inventoried your property and brought you in to compliance with operational Procedure (OP) 900 the personal property plan which was up dated in year 2005. See attached sheets. All items confiscated are highlighted in yellow or under lined in Black pen. continued on attached paper.

Staff Signature: R. Jackson    Date Returned to Inmate: 05-03-06

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

1) Appellant has not received a 115, nor has he been before Committee and declared a "program failure." As such, Jackson has no proper authority to arbitrarily classify appellant a program failure. That is a Committee function (CCR, Sections 3044(b) & 3375(c)(1)(E)[Continue at Bottom of attached page]

Signature: L. Haney    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number: _____
Board of Control form BC-1E, Inmate Claim

[left margin, vertical:] Complies world & Maps & other items for placement in

1st/AppB.P.
MAY 12 2008
2nd/Appeals
AUG 14 2006

60

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __5/12/06__    Due Date: __6/26/06__

Interviewed by: ___SOG  D. Coleman    6/4/06___

___SEE ATTACHED___

Staff Signature: _____    Title: __SOG__    Date Completed: __6/4/06__

Division Head Approved:

Signature: __M. Miller__    Title: __(Capt (A))__    Returned Date to Inmate: __6/10/06__

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_This document has been stripped of it's attached pages, and First Level's original reply & so-called attachments have been removed & altered to cover-up for that fake US he initially wrote prematurely. He was at my cell on 7/17/06, trying to get me to sign a new staff complaint_

Signature: __Sesion Along__    Date Submitted: __8/6/06__

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __8/7/06__    Due Date: __9/5/06__

☒ See Attached Letter

Signature: __B. Sampson CCII__    Date Completed: __8-30-06__

Warden/Superintendent Signature: _____    Date Returned to Inmate: __9/6/06__

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

61

Appeal Continued:

that was racist in motivation, morally reprehensible to appellant, and issued for no reason other than to harass appellant and his then cellmate.

In conducting the so-called "inventory" (a thinly disguised ruse to harass appellant and arbitrarily deprive him of property), Jackson falsified the Property Inventory Form and used trickery & subterfuge to deceive appellant into placing his signature on said form. Specifically, Jackson brought the form to the cell "door" and held it up for appellant to quickly scan and then told him to sign it. With no time to thoroughly read the form, appellant simply noted that his major appliances were listed (t.v., typewriter & walkman), and that NOTHING was listed under the section entitled "CONFISCATED ITEMS." (See attached Property Inventory form).
Naturally, that lead appellant to believe that all of the personal property he originally had was still among his belongings and/or otherwise accounted for, and he therefore signed the form per Jackson's instruction. However, after receiving his copy and going down the list item by item (Jackson had exited the section by then) appellant observed that some of his property had been omitted from the form, and not accounted for anywhere else.
For example, the form indicates that appellant has 2 palm combs, but it does not list the Afro-pick & Afro-comb that appellant purchased from the canteen in 1999, nor does it indicate disposition of said combs. It is written (Inventory form) as if the combs never existed, and that is a deception & blatant falsification of the document.

This blatant violation of Title 15 is repeated where Jackson indicates that there was only 1 hand lotion in appellant's property when in fact there were 3 containers of lotion in the property when appellant surrendered it to staff. The form also indicates that there was only 1 Do Rag (black) in the property when there were actually

(OVER)

62

two black Do Rags. All of appellant's legal material, including his current pending litigation, was in his property when Jackson took possession of it, but no legal material is listed on the form.

Appellant's Quran, Bible, dictionary, school and law books were counted as making up the ten books/magazines prisoners are allowed, when the inventory form clearly exempts said books from that number. Jackson also lied and deceived appellant into believing he could only own ten cassette tapes, when the form indicates that 12 is the allowed number.

So Jackson is in violation of CCR Title 15, Sections 3021 and 3391(a), which prohibits the falsification of records and documents, and which prohibits irresponsible or unethical conduct or conduct reflecting discredit on themselves or the department...

Informal
Response

Continued from 602 form
I brought you the confiscated items first. You selected the items you wanted and instructed me to destroy all the circled items and mailout all non-circled items. You then signed the Receiving and Release form. I then brought you the property inventory form and instructed you to look it over and then sign it on the bottom line. You signed it and took your copy then gave me back my copies. You know and I know you could have refused to sign both forms. All legal materials / papers are inside the large envelopes. I inventoried what property was there if it was not there then it did not get inventoried. The inventory forms have not been up dated with the new OP NO 806.

64

Section "F" Continued:

As stated, this 602 has been stripped of its attached pages that continues Sections "A", "C" & "D", and the original attached supporting documentation has been removed and, with the exception of the Property Inventory Sheet, which has been copied and reattached, substituted with documents that are totally irrelevant to the complaint, and that were not among the original attachments.

In short, someone has tampered with this legal document (602), and made a deliberate attempt to alter the complaint. Furthermore, the First Level Appeal Response still does not address the issues raised as noted in the attached memorandum of D.W. Bradbury, dated 7/19/06.

On 7/17/06, Sgt. D. Coleman approached my cell door in the presence of my cellmate and attempted to persuade me to sign another Staff Complaint form. He was unable to give a reasonable explanation for why that was necessary, and when I asked to see the complaint in order to refresh my memory, he handed me only the green sheet of the 602 proper. I asked to see the rest of the 602, but he refused to let me see it. In light of his refusal, and the way he mishandled my staff complaint and premature issuing a 115, I felt Coleman was up to something unethical again, and therefore refused to sign the new, yellow staff complaint form. At the same time, I made it clear that his involvement with the matter was a conflict of interest, and that I was not abandoning my complaint by refusing to sign a new form.

On 8/3/06, C/o Patterson, who worked a "double" that day, approached my cell late on Third Watch (After the 2100 hour count) and handed me the 602 in point (Log # A06-01050), at which time I discovered the condition it was in (missing pages, etc.).

(OVER)

65

Although this is not intended as a formal staff complaint against C/O Patterson at this time, it should be noted that Patterson has been telling inmates that "Haney has nothing coming," and that he & Jackson "intends to harass him" because Haney wrote a 602 accusing Jackson of being a racist." Thus, Patterson also have a motive for altering this 602.

The bottom line, is that this is an altered, tampered with legal document, and I am requesting an investigation into this matter, and appropriate disciplinary actions taken against the responsible party.

To: Appeals Coordinator

From: Haney, C-52678, A4-106

Date: July 30, 2006

Re: Appeal Log # PBSP-A-06-01050

I received a memorandum dated July 5, 2006, informing me of an "Exceptional Delay" in the processing of my staff complaint bearing the above log number. It further informed me that the complaint had been reassigned to Sgt. Moore for completion, and that the new estimated completion date was 7/12/06.

July 12, 2006, came & went and I never heard from Sgt. Moore. However, on 7/17/06, Sgt. Coleman came to my cell and attempted to persuade me to sign a new staff complaint form to attach to my existing staff complaint, even though the original form was still attached.

Obviously, in light of his First Level handling of the staff complaint, my response in seeking review at the Second Level, and his premature writing a CDC-115, there is a conflict of interest for Sgt. Coleman to have anything more to do with the investigation and completion of this matter, and therefore I declined to sign the new, clearly unnecessary second form.

However, I stated to Sgt. Coleman at the time, and I repeat again here: I do not wish to drop the complaint.

Because the new estimated due date is so far passed, and I haven't heard anything since Sgt. Coleman left my cell with the complaint in his possession, I am writing you to inquire about the status of my staff complaint.

Respectfully,

67

| | |
|---|---|
| **DATE:** | **July 28, 2006** |
| **APPEAL LOG NUMBER:** | PBSP- A06-01050 |
| **INMATE:** | HANEY |
| **CDC NUMBER:** | C-52678 |
| **APPEAL DECISION:** | **DENIED** |

## APPEAL ISSUE: (Modified)

You are requesting all documents you signed in regards to your property be rendered null and void. All confiscated property returned and a special committee hearing held to air your grievance.

## APPEAL RESPONSE:

A review of your appeal has been completed. Your complaint, including your requested remedial action, has received careful consideration.

On May 21, 2006, Sergeant D. Coleman interviewed you concerning the contents of your appeal. During the course of this interview you reiterated essentially the same issues and information contained in your appeal. No new issues were presented during the course of this interview. You had nothing to add to the contents of your written appeal.

## DETERMINATION OF ISSUE:

On June 4, 2006, at approximately 1100 hours, Sergeant D. Coleman conducted an interview with inmate HANEY. During the course of this interview inmate Haney related essentially the same information contain in the written complaint. Haney stated he had nothing to add to the written appeal, and then stated, "I want a response so I can respond to the response." I reminded inmate Haney he would be written a 115 if his allegations were found to be false. He responded by saying, "Just respond so I can respond, I want to respond." Inmate Haney provided no new witness or evidence to support his complaint.

A through investigation of the allegations was completed by Sergeant D. Coleman. The investigation revealed the following: Officer Jackson did not violate any policy or procedure by conducting cell searches, or by confiscating contraband and excessive property. Officer Jackson admirably performed his duties then documented these actions in accordance with Pelican Bay Policy and Procedure. It is a fact that Officer Jackson has repeatedly been tasked with attempting to keep inmate HANEY in compliance with property policy by conducting cell searches. Each cell search has resulted in inmate HANEY being found in violation of policy. It is apparent that each time inmate HANEY'S assigned cell is searched he is not in compliance with Pelican Bay Policy. In addition HANEY , has repeatedly written appeals of staff complaints when his assigned cell is searched in an attempt to punish Officer Jackson for performing his assigned duty. It is clear that inmate HANEY is using his total disregard for Pelican Bay State Prison policy and procedure as a tool to harass Officer Jackson, and cause undo expense to the Institution. Enforcing the policy and procedures necessary for the security and safety of both staff and inmates at Pelican Bay is the primary mission of all correctional staff. It is also apparent that inmate HANEY intends to continue this behavior. No evidence was found which indicated that Officer Jackson "tricked" inmate HANEY into signing any documents. Attached documents show examples of cell searches conducted and the disposition of the confiscated property.

Based on these facts your appeal is **DENIED** at the first level of review.

M. MILLER
Facility Captain (A)
Facility A

M. A. COOK
Associate Warden
General Population

68

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE:    SEP 0 6 2006

Inmate HANEY, C-52678
Pelican Bay State Prison
Facility A, General Population
Building 4, Cell 106

RE:    WARDEN'S LEVEL DECISION                    APPEAL: PARTIALLY GRANTED
       APPEAL LOG NO. PBSP-A-06-01050              ISSUE: PROPERTY

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP). Correctional Sergeant D. Coleman interviewed the inmate on June 4, 2006, at the First Level of Appeal Review.

## ISSUES

Inmate Haney requests to rescind his authorization to have his disallowed property sent out of the institution.

## FINDINGS

### I

On April 26, 2006, Officer B. Jackson conducted an inventory of the inmate's property which the inmate claims contains several discrepancies. He disputes the number of combs, containers of lotion and do rags he possessed but provides no documentation to substantiate his claims. He states the inventory also does not include any legal material and his bibles, dictionary, school and legal books were inappropriately included in the ten book limit. Additionally, he was mislead to believe that he could possess only ten cassettes tapes when the limit is actually twelve.

### II

Officer B. Jackson indicated in the Informal Level of Review that he inventoried the inmate's property the day after it had been confiscated due to his refusal to program. During the inventory, several items were disallowed to bring the inmate into compliance with current procedures. A list of the confiscated items was presented to the inmate at which time he selected some to be mailed out of the institution and others he authorized their disposal. The inmate was also informed that his legal material was contained in the large envelopes.

### III

The Operational Procedure # 806, Inmate Personal Property Plan, Attachment E, limits inmates to 10 books, magazines and newspapers. Exceptions are limited to educational courses and library books. Additionally, inmates housed in the general population are limited to 10 cassette tapes.

The California Code of Regulations, Title 15, Section 3191(c) states an inmate may select one of the designated methods for disposing of personal property. If the inmate makes no selection or has insufficient funds, staff shall document that fact and determine the method of disposition. The methods for disposing of

Supplement Page 2
Haney, C-52678
Appeal # PBSP-A-06-01050

personal property include mailing the items at the inmate's expense to an address of an individual willing to accept the property, donating the items to a charitable organization, institution/facility or rendering the items useless and disposing of them.

## DETERMINATION OF ISSUE

A review of the property inventory at the Second Level of Review does not reflect the inmate possessed any books in order for three to have been considered excessive. Therefore, Officer B. Jackson was contacted for further clarification. After reviewing the property inventory, he stated that he inadvertently failed to document the 10 books that were left amongst the inmate's personal property. However, he would not have included school books in that total as the inmate claims. Furthermore, the inmate was issued 10 cassette tapes leaving thirteen to be considered excessive.

As a result, a determination has been made that 3 books and 13 cassette tapes were appropriately disallowed. Officer B. Jackson also stated that he has retained possession of this property pending the outcome of the appeal. However, the inmate's trust account reflects that he is currently without funds to have any disallowed property mailed out of the institution and will need to inform Officer B. Jackson of another preferred method of disposition, therefore, the APPEAL IS PARTIALLY GRANTED. If the inmate fails to make a selection the method of disposition will be determined by staff. Furthermore, the inmate has failed to demonstrate any evidence of staff misconduct to warrant processing the appeal as a staff complaint as requested.

## MODIFICATION ORDER

No modification of this action or decision is required.

ROBERT A. HOREL
Warden

BDS #39 8-30-06

EXHIBIT 7

**INMATE/PAREOLEE**
**APPEAL FORM**
CDC 602 (12/87)

ocation: Institution/Parole Region: PBSP     Log No. A-u-01180     Category 1/1 C/o B. Jackson Accused him of being Racist.

2. _____     1. _____

2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and ~~staff representative decisions,~~ you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and ~~state what action was taken.~~ If you are not then satisfied, you may send your appeal with all the supporting documents and not more than ~~one additional page~~ of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

**STAFF COMPLAINT**

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| L. Haney Lavon | C52678 | PBSP | A5-126 |

**A. Describe Problem:** C/o B. Jackson has practiced racial discrimination against members of the Black Nation during the entire 8-9 months that appellant has been assigned to A.U.4, and that practice has continued right up to as recent as 4-26-06. Jackson's discrimination manifests most blatantly in the way he approves cell moves for all races except Black people. Specifically, appellant has observed Jackson approve Convenience cell moves

(Continue Next Page)

If you need more space, attach one additional sheet.

**B. Action Requested:** 1) An investigation into this complaint per 3391(d); 2) L.O.T. in Jackson's file; 3) Compliance with CCR Title 15, Sections 3004(a)(c) & 3391(a)(d); 4) Discontinue harassment of appellant.

**Inmate/Pareolee Signature:** Lavon Haney     **Date Submitted:** 5/4/06

**C. INFORMAL LEVEL** (Date Received: _____ )

**Staff Response:** _____

BYPASS

INMATE APPEALS BRANCH     RECEIVED FEB 26 2007

**Staff Signature:** _____     **Date Returned to Inmate:** _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

**Signature:** _____     **Date Submitted:** _____
**Note:** Property/Funds appeals must be accompanied by a completed     **CDC Appeal Number:**
Board of Control form BC-1E, Inmate Claim

JUN 0 5 2008
2ND APPEALS

18
MAY 0 4 2006     18
MAY 1 0 2008

72

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

**BYPASS**

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:                                     Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

**BYPASS**

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 6/5/06 _____ Due Date: 7/18/06

☒ See Attached Letter

Signature: N. Them CC II _____ Date Completed: 2-5-06

Warden/Superintendent Signature: _____ Date Returned to Inmate: 2-15-07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Seek full exhaustion of administrative remedies.

Signature: _____ Date Submitted: 3/20/07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

☒ See Attached Letter                                       MAY 2 1 2007

Date: _____

CDC 602 (12/87)

73

*Appeal Continues:*

whites, hispanics, and others (that is, moves made simply because the inmates want to cell with a friend or homeboy, even splitting the original cellmates and leaving only one person in the cell to accomplish the move), but deny specific cell moves requested by African-Americans who have legitimate medical reasons for requesting the move.

Jackson has discriminated against appellant in this way for the past several months just because Jackson is a bigot & racist who do not like accommodating Black prisoners except for in the most disagreeable, adverse, and inconvenient way he possibly can.

Appellant has observed Jackson make numerous convenient moves for other races (such as the inmate he moved from 227 to B-Section leaving that cell occupied by one inmate for several days, the convenience move he made for the inmate in 229 to 223, leaving one inmate in 221 for over a week, the convenience move of the inmate in 131 to another building, leaving 131 occupied by one inmate for more than a week, then convenience moving the remaining inmate to another building as well, leaving 131 virtually empty for approximately a week as of this complaint). However, Jackson refused to honor appellant's request to move to cell 229 to the lower bunk for <u>medical reasons</u> when that cell sat vacant for over a week, refused to honor his request to move to cell 125 for <u>medical reasons</u> when there was first only one inmate in the cell, and later when that same cell was completely empty, and refused to approve the requested swap between appellant and 226 where appellant again would have been able to have his medical need accommodated.

Rather than approve those moves that were non-adverse and agreeable to all concerned parties, Jackson deliberately sought out the most adverse, unwanted, and disagreeable move he could to accommodate this Black prisoner's medical concerns.

(OVER)

Jackson's bigotry and racial discriminitory prochivities have manifested in other ways as well. Specifically, appellant has observed Jackson passing out the lunches in the mornings. When he has extra lunch sacks that he decides to give out instead of passing them out in the order of the cell he comes to, Jackson routinely skip over the cell occupied by Black prisoners and gives the extra lunches to the other races only.

Appellant has observed Jackson do the same thing when passing out toilet paper. He gives the extra rolls to the other races, but skips over the Black cell.

Jackson consistently manifest the behavior of a racist and a bigot and seems to believe Black men are required to kiss his backside in order to get treated with respect and dignity, and humanly civilly. That is an oxymoron on it's face. Kissing someone's backside is <u>NEVER</u> humane or civil, and because appellant refuse to do so, Jackson has singled him out for harassment & adverse treatment.

Jackson's practices constitute violation of CCR Title 15, sections 3004(a)(c) and gives rise to a legitimate staff complaint pursuant 3391(a), and an investigation per subsection (d).

State of California                                    Department of Corrections and Rehabilitation
                                                                            CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

NAME: _*Haney*_ _____        PBSP LOG NO: _____

CDC #: _C52678_   HOUSING: _A4-126_   OTHER LOG #: _____

## YOUR APPEAL IS BEING RETURNED FOR THE FOLLOWING REASON(S):

[ ] 4. In violation of the CCR, Title 15, Sections 3084.2(b), 3084.3(c)(4) & 3084.5(a)(1), you failed and must attach evidence that shows you attempted to get an Informal resolution, prior to the appeal being assigned to the Formal Level(s) of appeal review. If a staff member fails to respond after 10 working days, use the Chain of Command and submit the Appeal to that staff member's supervisor, or unit/area supervisors.

| | | | |
|---|---|---|---|
| [ ] Counselor | [ ] PBSP R&R | [ ] Med Clinic | [ ] Records |
| [ ] Unit Officer | [ ] PSU Property | [ ] Dental Clinic | [ ] Inmate Assignments |
| [ ] Mail Room | [ ] PBSP SHU Prop. | [ ] Psych Office | [ ] PBSP Trust Office |
| [ ] Law Library | [ ] Food Services | [ ] Med Records | [ ] Plant Ops |
| [ ] Work Supervisor | | [ ] Other _____ | _____ |

[X] 5. You have not adequately completed the CDC Form 602, or have not attached the proper documents. Follow instructions and attach the items noted below, send what documents you have, or explain why they are not available per the CCR, Title 15, Section 3084.3(c)(5):

| | |
|---|---|
| [ ] Supporting Documents & Receipts | [ ] CDC 1845 Disability Verification |
| [ ] GA 22 Request For Interview | [ ] CDC 1824 Reasonable/Accommodation |
| [ ] CDC 115 Results With final dispo | [ ] CDC 7362 Health Care Required Co-Pay |
| [ ] CDC 115 IE/DA information/Report | [ ] CDC 128-C Medical Chrono |
| [ ] CDC 115 Supplemental Reports | [ ] Cell Search Slip |
| [ ] CDC 114-D Lockup Order | [ ] Property Inventory Receipt |
| [ ] CDC 1030 Confidential Disclosure | [ ] CDC 143 Property Transfer Receipt |
| [ ] Lab Results Sheet | [ ] Package Inventory Slip |
| [ ] CDC 7219 Medical Report | [ ] Proof of Ownership/Value |
| [ ] CDC 128-A _____ | [ ] More Specific Information |
| [ ] CDC 128-B _____ | [ ] Trust Statement |
| [ ] CDC 128-G _____ | [ ] CDC 193 Trust Acct Withdrawal Order |
| [ ] CDC 629A/629B Assess SHU Term | [ ] Legal Status Summary |
| [ ] CDC 812/A/B Critical/Enemy | [ ] Abstract of Judgment (AOJ) |
| [ ] CDC 839/840 Class/Reclass Score | [ ] CDC 1858[PC 148.6/CCR 3391(d)] Info.Advis. |
| [ ] CDC 958 Restoration Request | [ ] Emerg. Unwarranted CCR 3084.7(a)(2)(A) |
| [ ] CDC 1819 Correspondence/Denial | [ ] Failed to Complete Section _____ |
| [X] Other _Medical chrono_ | [ ] Sign & Date Section _____ |
| | [ ] CDC Form 602 _____ |

[ ] 7. The issue has been resolved, PBSP Appeal Log No. _____. A copy of the Second (Warden's) Level of Appeal review is attached per the CCR, Title 15, Section 3084.2(g)(1)(2(3).

[ ] 8. Abuse of the appeal procedure: _____

Comments: _Please attach the medical chrono you state the Officer ignored._

_D. W. BRADBURY_
Appeals Coordinator

MAY 17 2006
Date

This screening action may not be appealed unless the above reasons are inaccurate and the inmate can provide supporting arguments against the screening decision.
## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE
PBSP    (Rev. 02/06)    CCR 3084.3(d)    PBSP

MAY 04 2006                                                                 76

TO: D.W. Bradbury, Appeals Coordinator

FROM: L. Haney, C-52678, A4-126L

DATE: May 18, 2006

RE: ANSWER TO APPEAL SCREENING FROM:

In August 2005, I was given a COMPATIBILITY CELL MOVE (approved by 2nd/Watch Relief Officers on a Friday or Saturday) to cell A4-232 from cell A4-222. It had nothing to do with medical, and I did not even have a medical chrono at that time. There was an inmate already in cell A4-232 when I moved in, and that inmate was already situated on the lower bunk. Once again, the move had nothing to do with medical at that time.

Subsequently, My left leg started going "out" and causing me to fall down. I saw the doctor, who scheduled me for an MRI and issued a temporary medical chrono for a lower bunk pending results of the MRI. I gave that chrono to c/o Jackson and Patterson, and asked to be moved to a cell where I could be on the lower. That request was repeatedly denied. Although they knew that I was not actually on the lower bunk in cell 232, they claimed that the Bed Board showed my name in the lower bunk slot, and that they were not going to move me for that reason.

The results of the MRI showed that I not only required a lower bunk, but to be housed on the lower tier as well. That chrono, and the one listing the results of the MRI or herewith attached.

REspectfully submitted,

La Von Haney,
Appellant

May 29, 2006

As stated in the appeal, the racist behavior com-
ined of has been on-going over a period of months
& it up to 4-26-06, which is within five working days of
the date that this 602 was filed. 4-26-06, when appellant &
his then cellmate were forcifully moved from A4-232, is the last
date appellant was in a position to observe & note the racism
regarding the cell moves herein documented. 4-26-06, was also
the last date appellant was in a position to observe & note the
racial discrimination regarding the issuing of extra lunches. 4-26-0
was the last date appellant was situated to observe & note the
preferencial treatment regarding passing out toilet paper. All
of these complaints last occurred (dispite being on-going every
day Jackson worked) within the 15 working days allowed for
a 602 to be filed. A racist is a racist everyday, not just on
certain days.

Respectfully,

La Von Haney

State of California

Department of Corrections and Rehabilitation
CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

NAME: _HANEY_                        PBSP LOG NO: _____

CDC #: _C52678_    HOUSING: _A4-126_    OTHER LOG #: _____

## YOUR APPEAL IS BEING RETURNED FOR THE FOLLOWING REASON(S):

[ ]  4.  In violation of the CCR, Title 15, Sections 3084.2(b), 3084.3(c)(4) & 3084.5(a)(1), you failed and must attach evidence that shows you attempted to get an Informal resolution, prior to the appeal being assigned to the Formal Level(s) of appeal review. If a staff member fails to respond after 10 working days, use the Chain of Command and submit the Appeal to that staff member's supervisor, or unit/area supervisors.

[ ] Counselor        [ ] PBSP R&R        [ ] Med Clinic       [ ] Records
[ ] Unit Officer     [ ] PSU Property    [ ] Dental Clinic    [ ] Inmate Assignments
[ ] Mail Room        [ ] PBSP SHU Prop.  [ ] Psych Office     [ ] PBSP Trust Office
[ ] Law Library      [ ] Food Services   [ ] Med Records      [ ] Plant Ops
[ ] Work Supervisor                      [ ] Other _____

[ ]  5.  You have not adequately completed the CDC Form 602, or have not attached the proper documents. Follow instructions and attach the items needed below, send what documents you have, or explain why they are not available per the CCR, Title 15, Section 3084.3(c)(5):

[ ] Supporting Documents & Receipts      [ ] CDC 1845 Disability Verification
[ ] GA 22 Request For Interview          [ ] CDC 1824 Reasonable/Accommodation
[ ] CDC 115 Results With final dispo     [ ] CDC 7362 Health Care Required Co-Pay
[ ] CDC 115 IE/DA information/Report      [ ] CDC 128-C Medical Chrono
[ ] CDC 115 Supplemental Reports         [ ] Cell Search Slip
[ ] CDC 114-D Lockup Order               [ ] Property Inventory Order
[ ] CDC 1030 Confidential Disclosure     [ ] CDC 143 Property Transfer Receipt
[ ] Lab Results Sheet                    [ ] Package Inventory Slip
[ ] CDC 7219 Medical Report              [ ] Proof of Ownership/Value
[ ] CDC 128-A _____            [X] More Specific Information
[ ] CDC 128-B _____            [ ] Trust Statement
[ ] CDC 128-G _____            [ ] CDC 193 Trust Acct Withdrawal Order
[ ] CDC 629A/629B Assess SHU Term        [ ] Legal Status Summary
[ ] CDC 812/A/B Critical/Enemy           [ ] Abstract of Judgment (AOJ)
[ ] CDC 839/840 Class/Reclass Score      [ ] CDC 1858(PC 148.6/CCR 3391(d)) Info.Advis.
[ ] CDC 958 Restoration Request          [ ] Emerg. Unwarranted CCR 3084.7(a)(2)(A)
[ ] CDC 1819 Correspondence Denial       [ ] Failed to Complete Section _____
[ ] Other _____                [ ] Sign & Date Section _____
                                         [ ] CDC Form 602 _____

[ ]  7.  The issue has been resolved, PBSP Appeal Log No. _____. A copy of the Second (Warden's) Level of Appeal review is attached per the CCR, Title 15, Section 3084.2(g)(1)(2)(3).

[ ]  8.  Abuse of the appeal procedure: _____

Comments: _From the source of what you're saying it appears that some of this may have happened beyond time limits. Please provide specific dates that specific actions occurred so it can be appropriately reviewed._

MAY 25 2006

See Reply on
Attached page.
6/29/06
Haney

). W. BRADBURY                              Date
Appeals Coordinator

This screening action may not be appealed unless the above reasons are inaccurate and the inmate can provide supporting arguments against the screening decision.

## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

MAY 19 2006

78

State of California

Department of Corrections and Rehabilitation
Pelican Bay State Prison

# Memorandum

Date    :    July 18, 2006

To      :    HANEY, C52678
             AF04L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the
following reason:

☐ Unavailability of the appellant, staff, or inmate witness.

☐ Complexity of the decision, action, or policy.

☐ Necessary involvement of other agencies or jurisdictions.

☒ *Awaiting receipt of fact finder .*

This notification is required per the California Code of Regulations, Title 15,
Section 3084.6(b)(6). The new estimated completion date is ___8/01/06___.

Appeals Coordinator
Pelican Bay State Prison

State of California                                                    Department of Corrections and Rehabilitation
                                                                       Pelican Bay State Prison

# Memorandum

Date    :    August 1, 2006

To      :    HANEY, C52678
             AF04L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the
following reason:

☐  Unavailability of the appellant, staff, or inmate witness.

☐  Complexity of the decision, action, or policy.

☐  Necessary involvement of other agencies or jurisdictions.

☒  waiting on completion of fact finder.

This notification is required per the California Code of Regulations, Title 15,
Section 3084.6(b)(6). The new estimated completion date is ____8|15|06____.

Appeals Coordinator
Pelican Bay State Prison

80

State of California

Department of Corrections and Rehabilitation
Pelican Bay State Prison

# Memorandum

Date    :    August 14, 2006

To      :    HANEY, C52678
             AF04L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the
following reason:

☐  Unavailability of the appellant, staff, or inmate witness.

☐  Complexity of the decision, action, or policy.

☐  Necessary involvement of other agencies or jurisdictions.

☒  waiting on completion of ~~fact~~ finder.

This notification is required per the California Code of Regulations, Title 15,
Section 3084.6(b)(6). The new estimated completion date is _8-29-06_.

Appeals Coordinator
Pelican Bay State Prison

State of California                                          Department of Corrections and Rehabilitation
                                                                    Pelican Bay State Prison

# Memorandum

Date    :    August 29, 2006

To      :    HANEY, C52678
             AF04L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the
following reason:

☐  Unavailability of the appellant, staff, or inmate witness.

☐  Complexity of the decision, action, or policy.

☐  Necessary involvement of other agencies or jurisdictions.

☒  *awaiting completion of fact finder*

This notification is required per the California Code of Regulations, Title 15,
Section 3084.6(b)(6). The new estimated completion date is _____*9-13-06*_____.

Appeals Coordinator
Pelican Bay State Prison

State of California

Department of Corrections and Rehabilitation
Pelican Bay State Prison

# Memorandum

Date    :    September 13, 2006

To    :    HANEY, C52678
AF04L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the following reason:

☐ Unavailability of the appellant, staff, or inmate witness.

☐ Complexity of the decision, action, or policy.

☐ Necessary involvement of other agencies or jurisdictions.

*Awaiting on completion of fact finder.*

This notification is required per the California Code of Regulations, Title 15, Section 3084.6(b)(6). The new estimated completion date is ___10-18-06___.

Appeals Coordinator
Pelican Bay State Prison

State of California

Department of Corrections and Rehabilitation
Pelican Bay State Prison

# Memorandum

Date   :   October 17, 2006

To    :    HANEY, C52678
           AF04L 000000106L

Subject:   **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the following reason:

☐ Unavailability of the appellant, staff, or inmate witness.

☐ Complexity of the decision, action, or policy.

☐ Necessary involvement of other agencies or jurisdictions.

✓ *Awaiting for Completion of F/F.*

This notification is required per the California Code of Regulations, Title 15, Section 3084.6(b)(6). The new estimated completion date is ___11-18-06___.

*C. Will*
Appeals Coordinator
Pelican Bay State Prison

84

State of California                                          Department of Corrections and Rehabilitation
                                                                        Pelican Bay State Prison

# Memorandum

Date    :    November 17, 2006

To      :    HANEY, C52678
             AF04L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the
following reason:

☐ Unavailability of the appellant, staff, or inmate witness.

☐ Complexity of the decision, action, or policy.

☐ Necessary involvement of other agencies or jurisdictions.
✓ Awaiting completion of fact finder

This notification is required per the California Code of Regulations, Title 15,
Section 3084.6(b)(6). The new estimated completion date is _12/01/06_____.

Appeals Coordinator
Pelican Bay State Prison

State of California                                        ‹ artment of Corrections and Rehabilitation
                                                                        Pelican Bay State Prison

# Memorandum

Date    :    November 30, 2006

To      :    HANEY, C52678
             AF05L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the
following reason:

☐  Unavailability of the appellant, staff, or inmate witness.

☐  Complexity of the decision, action, or policy.

☐  Necessary involvement of other agencies or jurisdictions.

✓ Awaiting completion of fact finder

This notification is required per the California Code of Regulations, Title 15,
Section 3084.6(b)(6). The new estimated completion date is ___12-29-06___.

Appeals Coordinator
Pelican Bay State Prison

86

State of California

Department of Corrections and Rehabilitation
Pelican Bay State Prison

# Memorandum

Date    :    December 28, 2006

To      :    HANEY, C52678
             AF05L 000000106L

Subject:    **EXCEPTIONAL DELAY IN REVIEW OF APPEAL LOG #:** PBSP-A-06-01180

This is to notify you that the due date on the above referenced appeal has been extended for the following reason:

☐ Unavailability of the appellant, staff, or inmate witness.

☐ Complexity of the decision, action, or policy.

☐ Necessary involvement of other agencies or jurisdictions.

✓ Awaiting completion of fact finder

This notification is required per the California Code of Regulations, Title 15, Section 3084.6(b)(6). The new estimated completion date is _01/29/07_.

Appeals Coordinator
Pelican Bay State Prison

*87*

**PBSP Patient Information System**

h...th Care Services Unit Chrono

| Name: HANEY, LAVON | | CDC #: C52678 | Hsg: A04U 232L | | Date: 03-17-2006 |
|---|---|---|---|---|---|
| Instruction Type | Start Dt | End Dt | | Provider ID | Provider |
| LOWER TIER | 03-17-2006 1008 | 03-17-2007 1008 | | MPIMSRJM1 | MARINO, MD |
| ADVANCED DJD LEFT KNEE BY MRI | | | | | |
| | | | | | |
| LOWER BUNK | 03-17-2006 1008 | 03-17-2007 1008 | | MPIMSRJM1 | MARINO, MD |
| ADVANCED DJD LEFT KNEE BY MRI. | | | | | |

Distribution:      Health Record         Housing Unit         CCII         File                Inmate
*** When Appropriate, a copy shall be forwarded to Specific Clinic

| Name: HANEY, LAVON | CDC #: C52678 | Date: 03-17-2006 |
|---|---|---|

Facility A                              Page 1 of 1

PBSP/Medical 128-C

88



| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE: ,FEB 0 7 2007

Inmate HANEY, C52678
Pelican Bay State Prison
Facility A, General Population
Building 5, Cell 106

RE: WARDEN'S LEVEL DECISION                    APPEAL: DENIED
      APPEAL LOG NO. PBSP-A-06-01180         ISSUE: STAFF COMPLAINTS

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP). Correctional Lieutenant D. Coleman conducted the investigation and interview of this appeal issue.

ISSUES

Inmate Haney requests that his complaint be investigated and the harassment cease.

FINDINGS

I

The inmate alleges that Officer B. R. Jackson has practiced racial discrimination against him, during the entire time he has been assigned to Facility A, Housing Unit 4. The inmate contends that Officer B. R. Jackson's discrimination includes his method of cell moves and issuance of extra lunch bags and rolls of toilet paper. Additionally, the inmate alleges that Officer B. R. Jackson has been harassing him by cell searching and removing property.

DETERMINATION OF ISSUE

All submitted documentation and supporting arguments have been considered. Additionally, a thorough review has been conducted into the claim presented by the inmate and evaluated in accordance with PBSP institutional procedures and departmental policies.

All staff involved were appropriately noticed and interviewed. All staff personnel matters are confidential in nature. Information concerning such matters is not available in response to inquiries from the general public, inmate population, or other staff members. In the event of staff misconduct, the institutional supervisory and administrative staff would take the appropriate course of actions. However, this would remain confidential information and would not be released.

A thorough investigation was conducted at the First Level of Review. The investigation concluded that no evidence was found to support that Officer B. R. Jackson has been unprofessional. The inmate's allegations of staff misconduct have been deemed UNFOUNDED. Therefore, this APPEAL IS DENIED.

9o

Supplement Page 2
HANEY, C52678
Appeal # PBSP-A-06-01180

## MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

NAT # 11      Date 02/05/07

*al*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    **MAY 2 1 2007**

In re:    Haney, C-52678
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0610462          Local Log No.: PBSP 06-01180

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:** It is the appellant's position that Correctional Officer (CO) B. Jackson abused his authority and racially discriminated against the appellant. The appellant contends that CO Jackson uses state supplies as a means to control the inmates assigned to the housing unit. The appellant requests that CO Jackson stop harassing him, an investigation be completed, and that CO Jackson be disciplined.

**II  SECOND LEVEL'S DECISION:** The reviewer found that the appellant has not been subjected to misconduct on the part of named staff. The reviewer affirms that appropriate supervisory staff has been assigned to conduct an inquiry into this matter. Correctional Lieutenant D. Coleman reviewed the submitted material and interviewed the involved parties. Based upon developed information, it was determined that the allegation of staff misconduct was UNFOUNDED. In order to determine the facts, the inquiry arising from this appeal included his interview; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmate's or review of the appellant's central file. Second Level of Review (SLR) denied the appeal.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. The Director's Level of Review (DLR) notes that in this case the reviewer determined that the appellant's allegations were UNFOUNDED. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. In this case, the institution has reported the disposition to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Therefore no relief is provided at the DLR.

**B.  BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3000, 3001, 3004, 3391
Administrative Bulletin 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

**C.  ORDER:** No changes or modifications are required by the institution.

HANEY, C-52678
CASE NO. 0610462
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
       Appeals Coordinator, PBSP

EXHIBIT 8

# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region
1. **PBSP**
2.

Log No.
1. ACV-02266
2.

Category
7/2
c/o PATTERSON & JACKSO

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly. Haneye, Lavon

NAME: Khalil Lateef (aka Haney)   NUMBER: C-52678   ASSIGNMENT: PBSP   UNIT/ROOM NUMBER: A4-106

*AFF COMPLAINT* (watermark)

A. Describe Problem: This is a Group Appeal pursuant to CCR 15, Section 3084.2(f). Per section 3084.1(d), no reprisals may be taken against any participant in this group complaint. The undersigned residents of Housing Unit 4, Facility A, brings this Appeal to challenge the Daily practice & policy of Correctional officers Patterson & Jackson, which constitute a blatant violation, Disregard, and contempt of the rules & regulations codified at CCR Title 15 after

If you need more space, attach one additional sheet.   (Continue Next Page)

B. Action Requested: 1) Letters Of Instruction placed in their file; 2) an investigation into this illegal practice; 3) Instruct not to withhold food in the future; 4) Compliance with CCR 15, Sections 3050(a)(1)(2), 3391(a), and 3084.1(d).

Inmate/Parolee Signature: Khalil Lateef (aka Lavon Haney)   Date Submitted: 9/4/06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

*BYPASS* (stamp)
*RECEIVED DEC 14 2006 INMATE APPEALS BRANCH* (stamp)

Staff Signature: _____   Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

*BYPASS* (stamp)

Signature: _____   Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim   CDC Appeal Number:

to CDW SEP 05 2006   1ST/AW GP SEP 14 2006   2ND APPEALS OCT 16 2006

95

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 9-14-06 _____ Due Date: 10-27-06
Interviewed by: Sgt. W. Woon on 9/10/06 @ 9/23/06 _____

_____

_____

_____

Staff Signature: _____  Title: S.T.    Date Completed: 9/27/06
Division Head Approved    Title: ANGP    Returned
Signature: _____         Date to Inmate: 10-11-06

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

the First Level has taken sections of Title 15 out of context, & out of their intent & purpose to excuse and justify the C/o's violation of a clearly written and established Rule, which prohibits the withholding of prisoner's food. In the event (see Section "F" continued)

Signature: _____         Date Submitted: 10/15/06

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____/06 Due Date: 11/14/06
☒ See Attached Letter

Signature: N. Thrune CCII _____    Date Completed: 11-1-06
Warden/Superintendent Signature: _____    Date Returned to Inmate: 12-05-06

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Both of these C/o's, in their Informal Response's attached herewith as COMBINED complaints, admit that they withheld food in violation of the cited Sections of CCR Title 15, Section 3050(a)(1)(2). Second Level completely ignored the primary issue of this complaint, and the Group seeks just remedy at the Third Level of Review

Signature: _____         Date Submitted: 12/7/06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☒ See Attached Letter    Date: _____    FEB 0 6 2007

CDC 602 (12/87)

CCR Section "A" Continued:

being promulgated by the Director of Corrections pursuant
California Penal Code, Section 5058.

Specifically, Jackson, & Patterson have instituted a
practice of depriving prisoners of their breakfast, and
consequently of their lunch as well since the main
item for lunch (the meat & sometimes fruit) are
served on the breakfast tray. This is a deliberate,
premeditated practice carried out for the sole
purpose of depriving prisoners of their food as a
disciplinary sanction for forgetting, or being slow to
wake up and turn on the bright light. Such practice
is in violation of CCR Title 15, which makes no
provision, or sets forth any circumstance, for which
a prisoner's food may be withheld as a disciplinary
measure.

CCR Title 15, Section 3050 (a)(1)(2) provides, in
pertinent part, That : "(a) Each inmate shall be
(mandatory language) provided a wholesome, nutritionally
balanced diet..." (1) "... Food shall not (mandatory
language) be withheld nor standard menu varied as
a disciplinary sanction for any inmate. (2)" Inmates
shall be (mandatory) provided three meals each
day, two of which, shall be (again, mandatory)
served hot. The breakfast meal shall be (mandatory)
served not more than 14 hours following the previous
day's evening meal."

In carrying out this illegal policy and practice,
Patterson and Jackson are withholding prisoner's break-
fast and lunch as a disciplinary sanction, depriving
them of two of the three meals they are entitled to
each day, depriving them of one of the two hot
meals they are entitled to each day, causing them to
go without breakfast for more than the maximum 14
hours between the previous day's evening meal, and
depriving prisoners of the wholesome, nutritionally
balanced diet that Pelican Bay State Prison is required
to furnish each prisoner each day. Such acts by
Patterson, & Jackson are an abuse of authority and clear
violation of the above cited section of CCR Title 15.

# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region
1. **PBSP**    Log No. **A06-02001**    Category **9.14**
   *denied breakfast + lunch*
2.                2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Le Haney | C-52678 | PBSP | A4-106 |

**A. Describe Problem:** On August 8, 2006, while passing out the breakfast meal, C/O Patterson deprived appellant of his breakfast, and therefore of his lunch as well since the main courses for lunch (the meat, & sometimes fruit) are served on the breakfast trays. This was a deliberate act carried out for the expressed purpose of depriving appellant of his meal, despite the fact that appellant specifically asked to be given his tray. There

If you need more space, attach one additional sheet.    *(Continued Attached Page)*

**B. Action Requested:** Obviously, the meals cannot be made up for, which is exactly what Patterson was refusing, therefore, appellant's only remedy is that an L.O.T. be placed in his file, that he is ordered not to withhold prisoners meals again, and the he comply with CCR 3050(a)(1) and 3091(a).

Inmate/Parole Signature: *Lation Haney*    Date Submitted: 8/8/06

**C. INFORMAL LEVEL (Date Received:)**

Staff Response: Denied, you chose to refuse the meal. When I attempted offered the breakfast to you, you remained towards the back of the cell, with your light off, and said nothing to me, until I had completed feeding the section.

Staff Signature: *A. Pa*    Date Returned to Inmate: 8/14/06
*Originally returned to Mr. Haney on 8-18-06*

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Request Formal Review. Informal response is such an outright lie that appellant notes the Responder didn't even sign & date it. With a lie like that, appellant wouldn't have signed it, either. It is highly unlikely that any prisoner, including appellant, (Continued

Signature: *Lation Haney*    Date Submitted: 8/23/06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number:

AUG 24 2006
1ST / ALO-6

COMBINED

98

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **8/24/06**    Due Date: **10/06/06**

Interviewed by: _Sgt. M. Wood_ on _9/15/06_ _____

_____

_____

_____

_____

Staff Signature: _____    Title: _____    Date Completed: _9/27/06_

Division Head Approved:                                          Returned

Signature: _____    Title: _____    Date to Inmate: _10-11-06_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____    Due Date: _____

☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

.........................................................................

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

☐ See Attached Letter

                                                          Date: _____

CDC 602 (12/87)

99

### Inmate Appeal Continued:

is nothing, appellant could possibly have done to justify having his food withheld and, in fact, appellant didn't do anything to provoke Patterson to violate CCR Title 15 in that way.

CCR 15, Section 3050(a)(1)(2) provides, in pertinent part, "Each inmate <u>shall be</u> provided a wholesome, nutritionally balanced diet..." (1) "... Food <u>shall not</u> (mandatory language) be withheld nor standard menu varied as a disciplinary sanction for any inmate." (2) "Inmates <u>shall be</u> (mandatory language), provided three meals each day, two of which <u>shall be</u> (again, mandatory) served hot. The breakfast meal <u>shall be</u> (mandatory) served not more than 14 hours following the previous day's evening meal."

C/o Patterson withheld appellant's breakfast ? lunch, deprived him of two of the three meals he is entitled to each day, deprived him of one of the two hot meals he is entitled to each day, caused him to go without breakfast for more than the maximum 14 hours between the previous days evening meal, and deprived appellant of the wholesome, nutritionally balanced diet that the Department is required to furnish each prisoner each day.

There is no rule or regulation that gives any C/o, including Patterson, the authorization to deprive a prisoner of his food for any disciplinary reason, so that even if appellant had did something wrong (which he did not) such actions by Patterson was an abuse of authority and a clear violation of the above cited section of CCR.

### Section "D" Continued:

would deliberately choose not to take their meal, then turn around and appeal what he didn't want in the first place! That is what Informal Level is asking one to believe. Appellant did not refuse his meal.

(OVER)

100

<u>(Section "D" Continued):</u>

Patterson withheld it as a disciplinary measure in violation of the herein quoted sections of CCR Title 15. Furthermore, it is a fact that Patterson & his regular Second Watch cronie (B.R. Jackson) practice a routine policy within Housing Unit 4 of withholding prisoner's meals as a disciplinary measure. Should it become necessary, appellant will draft and collect signatures on a Group Appeal in support of the claims being alleged in this complaint.

As explicitely stated in the California Code of Regulations, there is <u>no</u> rules violation for which a prisoner's meal may be withheld as a disciplinary measure. That's what Patterson routinely does in this Housing Unit, and appellant therefore repeat his request for the actions requested in section "B" of this appeal, and for this administration to require staff compliance with CCR Title 15, Sect. 3050.

## (Section "D" Continued):

Patterson withheld it as a disciplinary measure in violation of the herein quoted sections of CCR Title 15. Furthermore, it is a fact that Patterson & his regular Second Watch cronie (B.R. Jackson) practice & routine policy within Housing Unit 4 of withholding prisoner's meals as a disciplinary measure. Should it become necessary, appellant will draft and collect signatures on a Group Appeal in support of the claims being alleged in this complaint.

As explicitely stated in the California Code of Regulations, there is _no_ rules violation for which a prisoner's meal may be withheld as a disciplinary measure. That's what Patterson routinely does in this Housing Unit, and appellant therefore repeat his request for the actions requested in section "B" of this appeal, and for this administration to require staff compliance with CCR Title 15, Sect. 3050.

## (Section "F" Continued):

a prisoner violates CCR Title 15, Section 3005(b), the only authorized disciplinary measures are a CDC-115, confinement to Quarters. Ad. Seg. pending disposition of the violation, or reprimand depending on the seriousness of the "Refusal To Obey." Nowhere is withholding food authorized for such a rules violation, and Section 3005(b) was not written to be interpreted and applied in that way.

The cite to D.P. Post orders for Floor officers to inspect cells, sections, exercise yards, and rotundas is not a blank check for withholding food as a disciplinary sanction, either. It only means what it says: searching those areas from time to time against the introduction in the prison & cells of dangerous contraband, such as weapons.

Furthermore, it is a misapplication of CCR 15, Sect. 3271, if used to justify withholding food as a disciplinary measure. That's what the C/o's did, and that action violates the clear, unambiguous command of CCR 15, Sect. 3050(a)(1)(2).

The Group request Second Level Review.

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category
1. PBSP   A06 J2240   9-14
2. _____   _____   access to all fed meals

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| L. Nancy | C-52678 | PBSP | A4-106 |

A. Describe Problem: On 8/27/06, while preparing to bring around the breakfast meal, C/o B.R. Jackson deprived appellant of his breakfast, and therefore of his lunch as well since the main course for lunch (the meat & sometimes fruit) are served on the breakfast trays. This was a deliberate, premeditated act carried out for the sole purposes of depriving appellant of his meal and to take reprisals against him for filing a complaint on his crony, C/o Patterson, for the

If you need more space, attach one additional sheet.                (Continued Next Page)

B. Action Requested: Obviously, the illegally withheld meal cannot be made up. Therefore, appellant's only just remedy, is: 1) a C.D.I. placed in Jackson's file; 2) that he is instructed not to withhold prisoners food in the future; 3) Compliance with CCR 15, sections 3052(d)(8)(2), 3084.1(d), 3391(a)

Inmate/Parolee Signature: Silton Nancy    Date Submitted: 8/27/06

C. INFORMAL LEVEL (Date Received: 08-29-06)

Staff Response: ON SUNDAY, AUGUST 27, 2006, BOTH OCCUPANT OF CELL A4-106 INMATES (IRCS) HAURY C-52678, A4-106 & JEFFERSON, H-01823, A4-106U DID NOT RECEIVE A BREAKFAST TRAY DO TO THERE BOTH FAILING TO TURN ON THERE BRIGHT LIGHT AS ORDERED BY OFFICER & PATTERSON AND I. IT SHOULD BE NOTTEN I DO NOT STAND IN FRONT OR OPEN A FOOD/CUFF PORT WHEN IT IS DARK IN THE CELL

                                            CONTINUED ON ADDITIONAL SHEET →
Staff Signature: B.R. Jackson    Date Returned to Inmate: 8-30-06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

this Informal Level response constitutes an admission to its violating CCR 15, 3050(d), by withholding food as a disciplinary sanction because appellant's bright light was not turned on until Jackson actually approached the cell with a food tray. (Continued Next Page)

Signature: Silton Nancy    Date Submitted: 9/10/06

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

COMBINED

SEP 11 2006
1ST LEVEL APP-06

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region: **PBSP**
Log No. *A06 12240*
Category *9-14* *access to all fed meals*

1.
2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME *L. Nancy*  NUMBER *C-52678*  ASSIGNMENT *PBSP*  UNIT/ROOM NUMBER *A4-106*

A. Describe Problem: On 8/27/06, while preparing to bring around the breakfast meal, C/o B.R. Jackson deprived appellant of his breakfast, and therefore of his lunch as well since the main course for lunch (the meat & sometimes fruit) are served on the breakfast trays. This was a deliberate, premeditated act carried out for the sole purposes of depriving appellant of his meal and to take reprisals against him for filing a complaint on his c/o, C/o Patterson, for the

If you need more space, attach one additional sheet.                     (Continued Next Page)

B. Action Requested: Obviously, the illegally withheld meal cannot be made up. Therefore, appellant's only just remedy is: 1) S.O.I. placed in Jackson's file; 2) that he is instructed not to withhold prisoners food in the future; 3) Compliance with CCR 15, Sections 3050(d)(1&2), 3084.1(d), 3391(a)

Inmate/Parolee Signature: *Levon Nancy*   Date Submitted: 8/27/06

C. INFORMAL LEVEL (Date Received: 08-29-06)

Staff Response: ON SUNDAY, AUGUST 27, 2006 BOTH OCCUPANT OF CELL A4-106 INMATES (sic) NANCY C-52678, A4-106L JEFFERSON, H-01823, A4-106U DID NOT RECEIVE A BREAKFAST TRAY DUE TO THEM BOTH FAILING TO TURN ON THERE BRIGHT LIGHT AS ORDERED BY OFFICER J. PATTERSON AND I. IT SHOULD BE NOTEN I DO NOT STAND IN FRONT OR OPEN A FOOD/CUFF PORT WHEN IT IS DARK IN THE CELL
CONTINUED ON ADDITIONAL SHEET

Staff Signature: *B.R. Jackson*   Date Returned to Inmate: 08-29-06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

This Informal Level response constitutes an admission to violating CCR 15, 3050(d) by withholding food as a disciplinary sanction because appellant's bright light was not turned on until Jackson actually approached the cell with a food tray. (Continued Next Page)

Signature: *Levon Nancy*   Date Submitted: 9/10/06

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

SEP 11 2006
1st/AO-G

Section "A" Continued:

same violation of CCR on August 8, 2006. Appellant was standing at his cell door with bright lights on when Jackson & Patterson came to his cell with the food trays, making it clear that he wanted his breakfast. In any event, there is nothing appellant could possibly have done to justify having his food withheld and, in fact, appellant didn't do anything to provoke Jackson to violate CCR Title 15 in that way.

CCR 15, Section 3050(a)(1)(2) provides, in pertinent part, "Each inmate <u>shall be</u> provided a wholesome, nutritionally balanced diet..." (1) "Food <u>shall not</u> (mandatory language) be withheld nor standard menu varied as a disciplinary sanction for any inmate." (2) "Inmates <u>shall be</u> (mandatory language) provided three meals each day, two of which <u>shall be</u> (again, mandatory) served hot. The breakfast meal <u>shall be</u> (mandatory) served not more than 14 hours following the previous day's evening meal.

So Jackson withheld appellant's breakfast & lunch, deprived him of two of the three meals he is entitled to each day, deprived him of one of the two hot meals he is entitled to each day, caused him to go without breakfast for more than the maximum 14 hours between the previous day's evening meal, and deprived appellant of the wholesome, nutritionally balanced diet that the Department is required to furnish each prisoner each day.

There is no rule or regulation in Title 15 that gives any So, including Jackson, the authorization to deprive a prisoner of his food as a disciplinary sanction for any reason. Thus, even if appellant had violated some rule (which he did not), such an action by Jackson was an abuse of authority and a clear violation of the above cited Section of CCR, as well as a violation of CCR 15, Sections 3084.1(d) & 3391(a).

(OVER)

## Section "D" Continued:

There is no provision in CCR Title 15, Section 3050, et seq that authorizes Jackson, or any other guard, to withhold food as punishment for any reason, let alone simply because a prisoner forgets, didn't hear, or was slow waking up (perhaps even because he is taking medication that makes it hard for him to wake up quickly) and responding to an order to turn on a bright light. All Jackson have to do is repeat the order once in front of the cell with the food trays, at which time the prisoner will mostly comply, or indicate that he do not wish to eat breakfast. If he refuse to turn on his bright light but insist on receiving his food, then Jackson's legal option is to write a 115 for refusing to obey a direct order — it is not to withhold a prisoner's food.

Additionally, the responder's whole argument of refusing to open a tray slot to give a prisoner his food for security & safety reasons, is flawed on it's face. The cell doors in the U.P. are perforated with holes big enough to push a stabbing implement through, or to just "gas" someone, without the necessity of a tray slot being opened. Hence, the argument simply does not "hold water." It is just a weak justification for withholding prisoner's food as a disciplinary sanction, and thumbing his nose at the cited sections of Title 15. Appellant repeat his request for the actions requested at Section "B" of this complaint.

INFORMAL RESPONSE

CONTINUED FROM FIRST PAGE
AND THAT OFFICER W. ANTHRSON AND I GIVE ALL
SECTION THE SAME ORDER TO TURN ON THERE
BRIGHT LIGHT TO RECEIVE A TRAY FOR SECURITY
AND SAFETY REASONS.

DR JACKSON

FI⋅⋅⋅⋅ LEVEL APPEAL RESPONSE

| | |
|---|---|
| **DATE:** | September 27, 2006 |
| **APPEAL LOG NUMBERS**: | PBSP-A06-02061 |
| | PBSP-A06-02240 |
| | +PBSP-A06-02266 |
| **INMATE:** | **HANEY** |
| **CDC NUMBER:** | C-52678 |
| **APPEAL DECISION:** | **DENIED** |

## APPEAL ISSUE: STAFF COMLAINT  (Modified)

Inmate HANEY, C-52678, A4-106L, contends Correctional Officers W. Patterson and B. Jackson deliberately withhold morning meals from inmates, violating several sections of the *Rules and Regulations of the* Director of Corrections.

## FINDINGS:

A review of your appeal has been completed. Your complaint, including your request for remedial action has received careful consideration. You were interviewed concerning the contents of appeal log number PBSP-A06-02061 on September 15, 2006, by Correctional Sergeant M. Lujan. You reiterated the information contained in the written portion of your appeal. You contend during the course of the morning meal being passed out, you stand at your cell door with the overhead light on, yet Officer Patterson and Jackson refused to give you a breakfast tray. On September 23, 2006, you were interviewed by Sergeant Lujan regarding appeal log numbers PBSP-A06-02240 and PBSP-A06-02266, these appeals addressed the same issues which are listed in appeal log number PBSP-A06-02061 and are related to Officers Jackson and Patterson. You reaffirmed the information listed in the three appeals and informed the appeals would be combined under the Staff Complaint, appeal log number PBSP-A06-02061. At the time of interview you signed and dated the CDC Form 1858, Rights and Responsibility Statement/Information Advisory, certifying the information contained in your Staff Complaint, CDCR 602 Inmate/ Parolee Appeal Form, to be true and correct.

On September 24, 2006, Officer Patterson was questioned regarding your complaint. Officer Patterson reports he and Officer Jackson enter each section within the unit and instruct all inmates to turn on their "bright lights" overhead cell light, prior to passing out the morning meal. This process is done in order to present a safe and secure manner for the officers during "cell feeding." Additionally, Officer Patterson reports, as the morning meal is passed out, the welfare of each inmate is verified. Officer Patterson reports on August 8, 2006, you stood at the rear of your cell with the overhead light off as breakfast trays were being passed out.

On September 24, 2006, Officer Jackson was questioned regarding your complaint. Officer Jackson reports you were instructed to turn on your bright light prior to opening your food port. Officer Jackson reports he was unable to observe your hands therefore, he was unable to determine the food port could be opened safely. Officer Jackson reports if an inmate refuses to turn on his bright light, remove hanging clothing from the cell door or remove obstructions from the rear cell window, the food port will not be opened.

On September 25, 2006, I observed the morning feeding process conducted by Officers Jackson and Patterson. As Officers Jackson and Patterson entered each section, they announced the breakfast trays were to be delivered. Officers Jackson and Patterson also issued verbal orders for the inmates to turn on their "bright lights for chow." As the officers passed out the breakfasts trays, I observed all inmates housed in the unit follow the officer's instructions. The unit was fed in a timely, safe, and secure manner.

Page 2
September 27, 2006
PBSP-A06-02061
PBSP-A06-02240
PBSP-A06-02266
HANEY, C-52678

## DETERMINATION OF ISSUE:

The California Department of Corrections and Rehabilitation (CDCR) have a responsibility to maintain order and institutional safety. For staff safety, any time it is necessary to open a handcuff port on a holding cell or food port on a cell, to handcuff an inmate, deliver food, medication, or any other services, staff should be able to determine that the food port can be opened safely. This process requires the inmate to turn on his "bright light." Should an inmate fail to follow the instructions, that refusal will constitute a refusal of the service being delivered.

The California Code of Regulations (CCR), Tile 15 Section 3005 (b) states:
> *Obeying Orders. Inmates and parolees must promptly and courteously obey written and verbal orders and instructions from department staff, and from employees from other agencies with authorized responsibility for the custody and supervision of inmates and parolees.*

Additionally, Pelican Bay State Prison (PBSP) General Population (GP) Floor Officers are required to conduct security checks of their units, which include the physical integrity of their unit and the well being of the inmates housed there. Officers Jackson and Patterson utilized the feeding process (either passing out the bag lunches or the food trays) in conjunction with a security check to verify the welfare of the inmates housed in their unit.

CDCR, PBSP, GP Post Orders for a Floor Officer, General Duties and Responsibilities states in part:
> *You will routinely conduct security inspections of the unit cells, sections, exercise yards and rotunda areas.*

CCR, Title 15 Section 3271, Responsibility of Employee, states:
> *Every employee, regardless of his or her assignment, is responsible for the safe custody of the inmates confined in the institutions of the department.*

In the event staff misconduct is sustained, the institution's Administration will take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public, or the inmate population and will not be released to the inmate. Although the inmate has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process.

In conclusion, a thorough review of the allegation presented in this complaint has been completed. Based on this review, the actions requested to resolve this complaint are **DENIED** at the First Level of Review. You have failed to provide reasonable evidence and testimony to support your claim that Officers Jackson and Patterson have deprived inmates of food with the intentions of malice. Additionally, it has been determined your allegation that Officers Jackson and Patterson have conducted their duty inappropriately is **UNFOUNDED.**

M. MILLER
Facility Captain (A)
Facility A

M. COOK
Associate Warden
General Population

*i 09*

| PELICAN BAY STATE PRISON |
|---|
| SECOND LEVEL REVIEW |

DATE:    **NOV** 0 9 2006

Inmate HANEY, C52678
Pelican Bay State Prison
Facility A, General Population
Building 4, Cell 106

RE:  WARDEN'S LEVEL DECISION                  APPEAL: DENIED
     APPEAL LOG NO. PBSP-A-06-02266         ISSUE: STAFF COMPLAINTS
                PBSP-A-06-02240
                PBSP-A-06-02061

This matter was reviewed by ROBERT A. HOREL, Warden, at Pelican Bay State Prison (PBSP). This Appeal has been filed as a Group Appeal in accordance with the California Code of Regulations (CCR), Title 15, Section 3084.2(f). On September 15, 2006, Correctional Sergeant M. Lujan conducted the interview at the First Level of Review.

## ISSUES

Inmate Haney requests that staff involved in withholding food receive Letters of Instruction. The inmate requests an investigation into the illegal practice and future compliance with the CCR, Title 15.

## FINDINGS

### I

The inmate alleges in his Appeal that Correctional Officers (C/O) W. Patterson and B. Jackson deliberately withhold morning meals from inmates as a disciplinary sanction for forgetting or being slow to wake up and turn on the bright light.

### II

The inmate was dissatisfied with the First Level Response, stating that food is not authorized to be withheld as a disciplinary measure.

## DETERMINATION OF ISSUE

Appeal Log Numbers PBSP-A-06-02240, PBSP-A-06-02061, and PBSP-A-06-02266 address the same issues and are related to C/O W. Patterson and C/O B. Jackson. The three appeals are combined under the Staff Complaint Appeal Log No. PBSP-A-06-02266.

All submitted documentation and supporting arguments have been considered. Additionally, a thorough review has been conducted into the claim presented by the inmate and evaluated in accordance with PBSP institutional procedures and departmental policies.

All staff involved were appropriately noticed and interviewed. All staff personnel matters are confidential in nature. Information concerning such matters is not available in response to inquiries from the general public, inmate population, or other staff members. In the event of staff misconduct, the institutional supervisory and

110

Supplement Page 2
HANEY, C52678
Appeal # PBSP-A-06-02266

administrative staff would take the appropriate course of actions. However, this would remain confidential information and would not be released.

The thorough review of the allegations presented in the complaint was completed. The investigation concluded that no evidence was found to support that C/O W. Jackson and C/O B. Patterson has been unprofessional. The accusations against C/O W. Jackson and C/O B. Patterson have been deemed UNFOUNDED; therefore, this Appeal is DENIED.

MODIFICATION ORDER

No modification of this decision or action taken is required.

ROBERT A. HOREL
Warden

NAT # 09     Date 11/07/06

STATE OF CALIFORNIA
..PARTMENT OF CORRECTIONS AND REHABILITA... ⅃
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  **FEB 0 6 2007**

                                                 **Group Appeal**

In re:    Haney, C-52678
           Pelican Bay State Prison
           P.O. Box 7000
           Crescent City, CA  95531-7000

      IAB Case No.: 0607027        Local Log No.: PBSP 06-02266

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain.  All submitted documentation and supporting arguments of the parties have been considered.

**I**   **APPELLANT'S ARGUMENT:**  It is the appellant's position that Correctional Officer (CO) W. Patterson and CO B. Jackson abused their authority and denied the appellant issuance of the morning meal.  The appellant contends that the actions of the officers constitutes a serious violation of his Constitutional rights.  The appellant requests that an investigation be completed, and that the involved staff be issued a Letter of Instruction, and that they cease withholding his meals.

**II**  **SECOND LEVEL'S DECISION:**  The reviewer found that the appellant has not been subjected to misconduct on the part of named staff.  The reviewer affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter.  Correctional Sergeant M. Lujan reviewed the submitted material and interviewed the involved parties.  Based upon developed information, it was determined that the allegation of staff misconduct was UNFOUNDED.  In order to determine the facts, the inquiry arising from this appeal included his interview; interview of department employees; and review of current policies, laws, and procedures.  Additional research may have included interviews of other inmate's or review of the appellant's central file.  The First Level of Review (FLR) and Second Level of Review denied the appeal.

**III**  **DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

    **A.  FINDINGS:**  Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the FLR.  In the event that staff misconduct was substantiated, the institution would take the appropriate course of action.  The Director's Level of Review (DLR) notes that in this case the reviewer determined that the appellant's allegations were UNFOUNDED.  All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant.  In this case, the institution has reported the disposition to the appellant.  Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process.  Therefore no relief is provided at the DLR.

    **B.  BASIS FOR THE DECISION:**
    California Penal Code Section: 832.7, 832.8
    California Code of Regulations, Title 15, Section (CCR): 3000, 3001, 3004, 3391
    Administrative Bulletin 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

    **C.  ORDER:**  No changes or modifications are required by the institution.

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

HANEY, C-52678
CASE NO. 0607027
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Appeals Coordinator, PBSP

**EXHIBIT 9**

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category **9/14**
1. **PBSP**    1. _____    **DENIED BREAKFA**
2. _____    2. _____    **TRAY**

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| L. Nancy | C-52678 | PBSP | A5-106 |

**A. Describe Problem:** This is a Staff Complaint authorized by CCR 15, Section 3391(a), to redress the misconduct and violation of the Rules and Regulations of the Director of Corrections by C/o B. Jackson and his crony C/o Patterson. On November 18, 2006, while housed in cell A4-106, 3 waiting for the breakfast trays to be passed out, B. Jackson deprived appellant of his meal as a disciplinary sanction in violation of Division 3 of Title 15, Section 3050(a)(1)(2), which mandates, in pertinent part, "Each inmate shall be provided a wholesome, nutritionally

If you need more space, attach one additional sheet.        (Continue attached page)

**B. Action Requested:** 1) Reprimand; 2) Add. in their file; 3) instruct both to discontinue withholding food as disciplinary sanctions; 4) full compliance with the Rules & Regulations codified at CCR Title 15.

Inmate/Parolee Signature: _L. John Nancy_    Date Submitted: 11/20/06

**C. INFORMAL LEVEL** (Date Received: _____)

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____
**Note:** Property/Funds appeals must be accompanied by a completed
**Board of Control form BC-1E, Inmate Claim**

CDC Appeal Number:

NOV 21 2006
1ST
AW-GP    16



115

Appeal Continued:

balanced diet. Nutrition levels <u>shall</u> meet the recommended daily allowances..." (1) "... Food <u>shall not</u> be withheld for standard menu varied as a disciplinary sanction for any inmate." (2) "Inmates <u>shall be</u> provided three meals each day, two of which <u>shall be</u> served hot. The breakfast meal <u>shall be served not</u> more than 14 hours following the previous day's evening meal."

The command terms "shall, shall not, and shall be," are used throughout this section of the Regulations, making these requirements mandatory entitlements. There is no language in this section that allows for an exception, permitting food to be held back as a disciplinary sanction, nor for any other reason.

In depriving appellant of his breakfast, he deprived him of two of three meals appellant is entitled to each day, because the main item for the lunch meal (sliced meat & sometimes the fruit) is served on the breakfast tray, and he deprived appellant of one of the two hot meals appellant is entitled to each day. Additionally, Jackson deprived appellant of his due process right to a nutritionally balanced diet, as the nutrition levels in the one dinner meal appellant received that day (Nov. 18, 2006), failed to meet the recommended daily allowances established by the Food and Nutrition Board as mandated at subsection (a) of section 3050. Moreover, Jackson's refusal to issue appellant and his cellmate, inmate Means, F-37660, a food tray, caused them to be without a breakfast meal more than 14 hours following the previous days evening meal, in further disregard & violation of the entitlements mandated by this section of the Rules & Regulations of the Director.

When appellant's cellmate verbally requested that he be given his breakfast, C/o Patterson expressed his contempt & disregard by mocking the appeal procedure. Specifically, he shouted to inmate Means to tell his cellmate (appellant) to "602 it, since he like filing 602's so much." The implication was clear. Namely, that

(OVER)

117

Patterson, & Jackson would do whatever they wanted, and didn't care about 602's complaining about their violation of CCR Title 15.

State of California                                                                 Department of Corrections and Rehabilitation
                                                                                                    CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

Name: _HANEY_____    Number: _CS2678___ Housing: _A5 106_____

### YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:

Screening Appeals Rejection Criteria:

[ ] 1.   The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[X] 2.   The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
    [ ] (a)  Your appeal has been screened out on _____ for _____.
    [ ] (b)  Your appeal is being reviewed at the _____ Level, Log # _____.
    [X] (c)  Your appeal has been completed at the _2ND___ Level, Log # _02266_____.

[ ] 3.   The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[ ] 6.   The appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he
    could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[ ] 8.   Abuse of the Appeal Process/Right to Appeal.
    [ ] (a)  Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is
        excessive. See CCR, Title 15, Section 3084.4(a).
    [ ] (b)  Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is
        rejected. See CCR, Title 15, Section 3084.4(b).
    [ ] (c)  Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated
        documentation. See CCR, Title 15, Section 3084.4(c).
        [ ] (1)  Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and B,
            per CCR, Title 15, Section 3084.2(a)(1).
        [ ] (2)  Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title 15,
            Section 3084.2(a)(2).
    [ ] (d)  Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in
        cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).
        [ ] (1)  Your appeal was screened out and returned to you with instructions:
            [ ]                    [ ]                    [ ]
    [ ] (e)  Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the inmate's
        welfare, per CCR, Title 15, Section 3084.1(a).
    [ ] (f)  This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362,
        Medical Request form).

[ ] 9.   Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10.  Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: _____
_____
_____
_____

_C. Wilber_____          **DEC 0 5 2006**
C. E. WILBER                       Date
Appeals Coordinator

This screening decision may not be appealed unless you can support an argument that the above is inaccurate.
In such a case, please return this form to the Appeals Office with the necessary supporting information.

**PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE**

NOV 21, 2006

CV 08    00651

**PROOF OF SERVICE BY MAIL**

(C.C.P. Sec. 101a #2015.5, 28 U.S.C. Sec. 1746)

(PR)    JW

I, _Khalif Lateef_____, am a resident of Pelican Bay State Prison, in the

County of Del Norte, State of California. I am over the age of eighteen (18) years and am a party to the

above-entitled action.

My State Prison address is: Post Office Box _7500_ Crescent City, California, 95531.

On the _____ day of _Jan._, _2008_, I served the following (set forth the exact title of

document(s) served):

_42 U.S.C.; Sect 1983 Complaint_____

_____

_____

on the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with postage

thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison,

Crescent City, California, 95531, addressed as follows:

_U.S. Dist. Court_          _____

_Northern Dist. California_  _____

_450 Golden Gate Ave._       _____

_San Francisco, Ca. 94102-3483_  _____

There is delivery service by United States mail to the place so addressed and/or there is regular

communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _____ day of _Jan_, _2008_

CDC NO: C-52628  HOUSING: D3-129

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

**RECEIVED**

JAN 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# LEGAL MAIL

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532



UNITED STATES POSTAGE
$ 04.90°
MAILED FROM ZIP CODE 9553

Clerk of the Court
UNITED STATES DISTRICT COURT
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102-3483